■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT RIVERS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Spodek, J.), rendered June 21, 1983, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and the facts and as a matter of discretion in the interest of justice, and new trial ordered.

The testimony of Robin Matos and John Pringle, the principal prosecution witnesses, established that sometime during the late evening hours of September 15, 1978 and the early morning hours of September 16, 1978, they were talking outside of an all-night grocery store named "Stallion's" when they observed the defendant in the company of an unidentified Puerto Rican person. The same witnesses also saw "Dutch" Reid, sitting on a chair atop the stoop at 2080 Nostrand Avenue, drinking beer, and heard yelling between Reid and defendant. Matos and Pringle then went into Stallion's and from behind the glass doorway saw defendant standing with his arms folded in front of Reid. They saw a flash come from under defendant's arm, heard a loud noise, and saw Reid fall over backwards and end up lying on the sidewalk. At that time, according to Matos, defendant was about two or three feet away from the victim and the

unidentified Puerto Rican person was about 20 feet away. Matos saw defendant trying to pull the victim out from where he had fallen; he was aided in this by another individual named Joey Rios. Defendant was then on top of the victim, pressing on his chest, saying "you got to live". Over defense counsel objection, Matos was permitted to testify that Rios responded "what the hell you go and do that for if you got to live"?

Serious trial errors deprived the defendant of a fair trial. The most serious errors occurred when the trial court not only curtailed defense counsel's argument on summation that Matos and Pringle identified defendant as the killer in order to avoid suspicion being cast upon themselves, but also advised the jury that defense counsel had breached an agreement which had kept evidence from the jury. During his summation, defense counsel summarized various possibilities, one of which was that Pringle and Matos in fact saw nothing. After embellishing this theme, defense counsel later returned to it and declared that Pringle and Matos had something in common: "They have shared these experiences together and they find themselves out on the street where a homicide occurs and they find it necessary to force that focus of investigation away from them". After a bench conference, defendant's counsel resumed his summation along the same line and was interrupted by the Trial Judge who called a further bench conference. Counsel subsequently continued before the jury:

"There is no suggestion here of any impropriety by the police or the district attorney. I'm not suggesting that anyone worked with these two. They didn't need anyone to work with them. They reacted to protect themselves, to stop some investigation that might center on them.

"Mr. Seidel [Assistant District Attorney]: Judge, can I approach?

"The Court: Objection sustained. We had an agreement outside that you and I had discussed. Don't know whether it was on the record — I believe it was — and counsel would — I sustained some objections on this trial with regard to some evidence —

"Mr. Davenport [Defense counsel]: Judge, I think we better discuss this before you make a record.

"The Court: *With regard to some evidence that I restricted the people from introducing and I would not introduce some evidence upon the assurance of defense counsel that the statements which he just made would not be made on the summation.*

"There was to be no discussion at all because of some prior things that had happened in this case and *I want nothing further*

*along those lines to be spoken about on the record to me and because of my keeping from you some material.* Continue, counselor. You continue your summation. I told you I would do this." (Emphasis added.) After defense counsel protested this ruling, the court continued: "Members of the jury, it is up to me to make rulings as to what's fair and not fair. That's the province of the trial court and *I have ruled that this lawyer at this point may not discuss this any further in accordance with an agreement that we had reached before. Please, continue and stay away from this, counselor."* (Emphasis added.)

Following the prosecutor's summation, defense counsel moved for a mistrial because of the interruption of his summation and because of the accusation that he had breached an agreement, adding that the court had addressed the jury in an angry tone "as though I had done something quite heinous". After the court denied the motion, defense counsel stated that having been told that evidence was kept from them, the juror's might speculate as to what it was. Defense counsel said that he "would consent to the court advising that what was kept from them was that there was a prior statement made, prior to the arrest, prior to their deep involvement with the criminal justice system". As part of its charge to the jury, the trial court told them: "What was kept from you was that there were prior separate statements made both by Matos-Rodriguez and by Pringle giving their story and identifying the defendant shortly after the incident and before they were involved in the criminal justice system."

The "agreement" which the trial court found that defense counsel had breached was made after defense counsel's cross-examination of Pringle. The prosecutor had argued that defense counsel's cross-examination about Pringle's probation implied that Pringle had received considerations for his testimony against defendant, and that therefore the prosecution should be able to ask Pringle about prior consistent statements. The court then asked defense counsel if he was going to make such an argument in summation to which defense counsel replied no. The court then ruled that if the defense would not use this argument, the prosecutor would not be permitted to elicit prior consistent statements. The court continued: "I could see the argument being made in summation that the testimony of this witness should not be believed because he gave this story to the police and he was expecting favors and was never violated for some reason because he gave these stories to the police, there being an implication that it was not truthful. If you give me your assurance that you are not going to raise that issue, then I will keep these questions from the __". Defense counsel subsequently

stated that "[m]y inference is that he is a bum and not to be believed". Thus, as indicated by the record, defense counsel promised in effect not to argue that these two witnesses had recently fabricated their story in order to obtain "favors".

Contrary to the trial court's determination, counsel's summation declaration that Matos and Pringle identified defendant to avoid suspicion being cast upon themselves for the murder did not breach the agreement. His statement that Matos and Pringle had a motive to falsify their story was not a claim of recent fabrication (*see, People v Davis,* 44 NY2d 269; *People v Caserta,* 19 NY2d 18). Therefore, defense counsel's argument was proper and the trial court's restriction of the summation was error (*see, Herring v New York,* 422 US 853; *Davis v Alaska,* 415 US 308; *People v Carter,* 86 AD2d 451). The trial court compounded its error by denouncing defense counsel in front of the jury for breaking the agreement (*see, People v White,* 57 NY2d 129; *People v De Jesus,* 42 NY2d 519).

Although we see no merit in the defendant's contention that Pierre Neptune, a designer of street lighting, should not have been permitted to testify as an expert, it is plain that the trial court erred in ruling that if defendant took the stand and denied on cross-examination that he had ever used a gun, the prosecution could call someone who had not observed the homicide, Wayne Jarrels, to testify in rebuttal that he had seen defendant fire a gun on a prior occasion. "It is well established that the party who is cross-examining a witness cannot introduce extrinsic documentary evidence or call other witnesses to contradict a witness' answers concerning collateral matters solely for the purpose of impeaching that witness' credibility" (*People v Pavao,* 59 NY2d 282, 288-289; *see also, People v De Garmo,* 179 NY 130). Under the facts of this case, Criminal Term's decision to permit the rebuttal testimony violated this rule. Defendant also correctly argues on appeal that Rios' hearsay statement was improperly admitted into evidence as a spontaneous declaration since there was no evidence to establish that Rios actually saw the shooting (*see, People v Rhodes,* 96 AD2d 565).

A new trial is necessary. Lazer, J. P., Mangano, Gibbons and Rubin, JJ., concur.