THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SANTOS ORTIZ, Appellant.

First Department, April 17, 1990

---

**APPEARANCES OF COUNSEL**

*Mitchell S. Brill* of counsel *(Deborah L. Morse* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Alexandra Cury* of counsel *(Philip L. Weinstein,* attorney), for appellant.

**OPINION OF THE COURT**

WALLACH, J.

■ This conviction for robbery and larceny must be reversed because in the course of the trial prejudicial evidence was received against defendant pertaining to a prior robbery attempt, which was then improperly utilized to demonstrate defendant's propensity to commit the crime with which he was charged *(People v Fiore,* 34 NY2d 81; *see, People v Molineux,* 168 NY 264).

The People's case established, to the evident satisfaction of the jury, that at about 8:45 A.M. on the morning of December 11, 1987, Michelle Saferstein entered the IRT subway station at 103rd Street and Broadway on her way to work; that she approached the railway clerk's booth to purchase tokens with a $5 bill in her right hand; and that she was accosted by defendant who, after "crunching her fingers", pried the bill from her hand and then fled.

Because Ms. Saferstein was unable to make a positive identification of defendant in court, the testimony of the token booth clerk, Ivan Hodge, assumed central importance in this simple case. After Hodge identified defendant in open court,

he was asked by the prosecutor "in what manner do you recognize him?" Thereupon the Assistant District Attorney brought out, over objection, that Hodge had seen defendant "three or four times" before the Saferstein incident, selling tokens on the subway platform. Hodge was then permitted to testify, over strenuous objection and after defense counsel's request to approach the Bench for a sidebar had been denied, to "an altercation" between defendant and another man at "about 20 minutes to nine" before the Saferstein robbery. Hodge then stated: "He [referring to defendant] attempted to snatch some money off another man."

After another defense objection was overruled, Hodge was allowed to amplify his testimony further: "He [defendant] was trying to take some money from the man in front of me, causing the man's head to be bumped against the booth."

We would hold that this evidence of an uncharged crime— utterly collateral to the issue before the jury—was sufficiently prejudicial so as to deprive defendant of a fair trial *(People v Lewis,* 69 NY2d 321; *see, People v Alvino,* 71 NY2d 233). The prejudice was compounded by the prosecutor's insidious use of this improperly received evidence in summation to show defendant's predisposition to commit the Saferstein crime arising from defendant's lack of success on the first attempt with the unknown man. The Assistant District Attorney told the jury: "[I]t's not just a brief confrontation, he bumps someone else's head against the window. Mr. Hodge looks up from what he's doing and speaks to him. He says, we know each other, it's okay. Just bang a guy's head against the window. *Was he going to take his money and wasn't success-ful?"* (Emphasis added.)

He further argued: "All the time * * * between the first altercation and when he goes and actually takes Miss Safer-stein's money, *finally accomplishes what he wants to do, get someone's money,* that's what he's doing there that morning". (Emphasis added.)

■ By defendant's timely objection and futile request for a sidebar, we hold that defendant adequately preserved his evidentiary objection for appellate review. While no objection was directed to the cited portion of the People's summation, we would note this cumulative error in the interests of justice.

Where a prosecutor seeks to introduce proof of an un-charged crime, his proper course of action was laid down in *People v Ventimiglia* (52 NY2d 350, 362) as follows: "Whether

some time prior to trial, just before the trial begins or just before the witness testifies will depend upon the circumstances of the particular case, but at one of those times the prosecutor should ask for a ruling out of the presence of the jury at which the evidence to be produced can be detailed to the court, either as an offer of proof by counsel or, preferably, by presenting the live testimony of the witness * * *. The court should then assess how the evidence came into the case and the relevance and probativeness of, and necessity for it against its prejudical effect, and either admit or exclude it in total, or admit it without the prejudical parts when it can be done without distortion of its meaning".

■ Had this course been followed here, the court would have been given a proper opportunity to suppress that portion of Hodge's testimony referring to the prior robbery attempt. We would note that receipt of this evidence cannot be sustained on the "identity" exception cited for appropriate prior crime proof in *People v Molineux* (168 NY 264, 313, *supra)*. That exception has been confined to situations where the uniqueness of the prior crime, repeated as a kind of "signature" in the crime on trial, serves to identify defendant as the perpetrator of both *(see, e.g., People v Allweiss,* 48 NY2d 40). But, as we have held before, admissibility of such evidence should not rest solely upon an attempt to bolster the testimony of an identifying eyewitness in the manner which occurred here *(People v Bines,* 137 AD2d 431, 432, *lv denied* 71 NY2d 1023; *but cf., People v Gines,* 36 NY2d 932, 933).

■ The remaining "bad act" evidence arose from Hodge's testimony that on several occasions prior to the Saferstein crime he had noticed defendant on the subway platform selling tokens to passengers. We would not necessarily reverse if this item of testimony stood alone as part of the People's efforts to bolster Hodge's identification by demonstrating his prior familiarity with defendant. But if the matter is retried, the court must in any event redact the evidence of the prior robbery attempt, it should subject the token selling testimony to some degree of scrutiny, so that a sanitizing formula may be developed *(People v Bines, supra; People v Ortiz,* 142 AD2d 248).

The People argue that token selling, far from being a bad act, is, on the contrary, morally neutral, and it may even be urged to manifest, if anything, commendable entrepreneurial pluck. This argument is all well and good as far as it goes, but it does not go very far. While there is no evidence that Mr.

Hodge personally resented defendant's competitive activities, there is always the possibility that some juror may be led to speculate upon the manner in which defendant acquired the inventory for his enterprise by either stealing, or perhaps receiving, stolen tokens. Since these would also constitute uncharged crimes, their penumbral presence should be excised from the case, providentially given, as we are, a second and more reflective look at the situation. This will require the trial court, under *Bines (supra),* to devise the most desirable formulation for Mr. Hodge's sanitized account on this aspect of the proof. Describing defendant's conduct as "hanging about" may be too British public school; "hanging out" may be too closely tied to street argot; and "hanging in there" may excessively gild defendant with a stoicism and tenacity foreign to his character. "Hanging around" might well strike the right chord. We need not tarry to exhaust the myriad possibilities presented, and instead would confidently remit the matter to the wise discretion of the Trial Judge.

Accordingly, the judgment of Supreme Court, New York County (Jay Gold, J.), rendered June 29, 1988, by which defendant was convicted, after a jury trial, of third degree robbery and fourth degree grand larceny and sentenced to concurrent terms of 3 to 6 and 1½ years in prison should be reversed, on the law, and as a matter of discretion in the interest of justice, the second count of the indictment (grand larceny in the fourth degree) remanded for a new trial, the third degree robbery conviction vacated with leave to the People to resubmit that charge to the Grand Jury if they be so advised.

MURPHY, P. J., SULLIVAN, MILONAS and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, rendered on June 29, 1988, unanimously reversed, on the law, and as a matter of discretion in the interest of justice, the second count of the indictment remanded for a new trial, the third degree robbery conviction vacated with leave to the People to resubmit that charge to the Grand Jury if they be so advised.