Simons, J.
(dissenting). Defendant has been indicted for grand larceny. He contends the indictment must be dismissed because his right to appear and testify before the Grand Jury was abridged by a prospective court ruling permitting his cross-examination about a pending criminal charge if he testified. He bases his claim upon our decision in People v Betts (70 NY2d 289; see also, People v Bennett, 79 NY2d 464), which prohibits the People from cross-examining a defendant about pending criminal charges when he chooses to testify during trial and he contends that the Betts rule applies with equal force to Grand *723 Jury proceedings to protect him from incriminating himself in the pending matter. The majority agree with him. However, the purpose of a trial and the constitutional right of a defendant to testify at trial are significantly different from the purpose of Grand Jury proceedings and a defendant’s limited statutory right to testify before the Grand Jury. In my view, Betts need not and should not be applied to the Grand Jury proceedings, and accordingly, I dissent.
Defendant was convicted of robbery in 1977. In 1990, while testifying before a Grand Jury investigating an unrelated charge, he denied that he had been involved in the 1977 robbery. In 1992 defendant was indicted for perjury as a result of that testimony. The larceny charges in this prosecution were subsequently presented to the Grand Jury. When defendant sought to testify the Assistant District Attorney advised him that if he did so, he would be cross-examined about the 1977 robbery and his testimony would be used against him in the pending perjury proceedings. Defendant chose not to testify. He was subsequently indicted for grand larceny and this motion to dismiss followed.
Under the general rule, a criminal defendant who testifies at trial on his own behalf is subject to cross-examination about any "vicious or criminal act of his life” (People v Sorge, 301 NY 198, 200). In People v Sandoval (34 NY2d 371), we recognized that such a broad rule had a chilling effect on the full development of the record because it prevented many defendants from testifying and thereby denied the jury significant evidence affecting guilt or innocence. Accordingly, we held that a defendant could obtain a prospective ruling on the permissible scope of cross-examination directed to immoral, criminal or vicious acts. We did so in an effort to encourage defendants to testify, and we explicitly admonished Trial Justices in exercising their discretion to bear in mind the effect their decisions might have on the fact-finding process if the defendant decided not to testify as a result of their rulings (id., at 378).
In People v Betts (70 NY2d 289, supra), defendant was on trial for rape and was also subject to a pending charge of burglary. The People sought to question him about the pending charge to impeach his credibility. Following a Sandoval hearing, the Trial Justice ruled that the People could do so. That ruling presented defendant with a Hobson’s choice of constitutional magnitude; if he exercised his Sixth Amendment right to testify and defend himself in one prosecution, he waived his *724 Fifth Amendment right against self-incrimination in the other. In short, by permitting defendant to be cross-examined about pending unrelated charges for impeachment purposes in one case, the court had impaired his ability to defend himself against two separate criminal charges. Accordingly, we held that the People could not impeach a testifying defendant by questions about unrelated pending criminal charges, noting that " '[w]hile an accused, unlike an ordinary witness, has an option whether to testify at all, exacting such a [sweeping] waiver as the price of taking the stand leaves little of the right to testify on one’s own behalf ” {id., at 295, quoting McCormick, Evidence § 42, at 92 [3d ed]).
Our ruling in Betts rested on three separate concerns: defendant’s constitutional right to testify at trial, his constitutional right to avoid self-incrimination on a pending charge, and, implicitly, advancing the fact-finding process of the trial. These three concerns are not seriously implicated in Grand Jury proceedings.
Addressing first the Grand Jury’s fact-finding role, a Grand Jury proceeding is something quite different from a trial; its function is limited to the discovery of reasonable cause to indict {see, CPL 190.65 [1]). The Grand Jury does not determine guilt or innocence — it determines only whether sufficient evidence exists to bring charges against the defendant (see, People v Swamp, 84 NY2d 725, 729-730; People v Jennings, 69 NY2d 103, 115; People v Calbud, Inc., 49 NY2d 389, 394). Because of this limited function and purpose, there is no need to further its fact-finding process by applying the Betts rule to enable the subject to present his defense (cf., People v Valles, 62 NY2d 36 [Grand Jury need not be charged on mitigating defenses]).
Moreover, defendant’s right to appear as a witness before the Grand Jury, in contrast to his Sixth Amendment constitutional right to submit evidence on his own behalf at trial, is derived exclusively from statute (CPL 190.50 [5]). This Sixth Amendment right is not diminished in any way if a defendant is foreclosed from testifying before the Grand Jury. Indeed, defendants enjoyed no legal right to appear before the Grand Jury until the Legislature authorized it in 1940 {see, Preiser, Practice Commentaries, McKinney’s Cons Law of NY, Book 11 A, CPL 190.50, at 284; L 1940, ch 643).
Moreover, the right to testify before the Grand Jury is conditional. The statute provides that a defendant choosing to do so must waive immunity, must submit to cross-examination *725 by the District Attorney (CPL 190.50 [5] [b]) and cannot limit the scope of cross-examination except upon agreement of the District Attorney (CPL 190.50 [5] [b]; 190.45 [4]). These statutory provisions authorize the People to fully question a defendant choosing to testify on relevant matters, including his credibility. Neither defendant nor the majority offer any reason why the statutes should be ignored or how they can be interpreted to include the rights announced in Betts.
In sum, two of the three concerns addressed by Betts are absent when defendant chooses not to testify before the Grand Jury — the limited fact-finding function of the Grand Jury is not impaired, and defendant does not forego a constitutional right to testify in order to preserve his right to avoid self-incrimination in another pending matter. Furthermore, the third concern, defendant’s right to testify on his own behalf at the time when guilt or innocence is resolved without incriminating himself in the pending matter, is fully protected because the Betts rule will apply if he is indicted and chooses to take the stand at trial. Thus, the theoretical basis for the Betts rule does not support its application to defendant’s limited statutory right to testify before the Grand Jury.
Refusing to apply Betts here does not, as the defendant contends, diminish his "valued statutory option” to appear before the Grand Jury (see, People v Evans, 79 NY2d 407, 413-414). The Legislature has expressly provided that the statutory right is conditioned upon the defendant’s willingness to waive the privilege against self-incrimination and subject himself to cross-examination by the District Attorney (CPL 190.50 [5] [b]; 190.45 [4]; compare, People v Evans, supra; People v Corrigan, 80 NY2d 326, 332). He still retains his option to testify, but he must exercise it within the boundaries established by the Legislature.
Nor does this conclusion "overlook” the " 'correspondingly important’ ” right to avoid self-incrimination in the pending matter (majority opn, at 720). In Betts, the Court was required to balance the constitutional rights to testify at trial and avoid self-incrimination. But here, because the statutory right to testify before the Grand Jury requires the waiver of the right to avoid self-incrimination, the court need not perform the balancing equation required by the competing rights at stake in Betts.
Accordingly, I would reverse the order of the Appellate Division and reinstate the indictment.
*726 Judges Bellacosa, Smith, Levine and Ciparick concur with Chief Judge Kaye; Judge Simons dissents and votes to reverse in a separate opinion in which Judge Titone concurs.
Order affirmed.