[638 NYS2d 642]

The People of the State of New York, Respondent, v Lorenzo Blakeney, Appellant.

First Department, March 7, 1996

**APPEARANCES OF COUNSEL**

*Douglas W. Henkin* of counsel, New York City (*Amy J. Longo* on the brief [*Fried, Frank, Harris, Shriver & Jacobson*]); *E.*

*Joshua Rosenkrantz* and *Paul Skip Laisure, Office of Appellate Defender*, attorneys), for appellant.

*Mark Dwyer* of counsel, New York City (*David L. Jaffe* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

The main issue on appeal revolves around whether the People improperly impeached defendant's credibility by cross-examining him with respect to an unrelated pending criminal charge (*see, People v Bennett*, 79 NY2d 464, 468). We hold that, the door having been opened to such inquiry by defendant's testimony on direct examination that he had never before seen the person with whom he was arrested and charged with selling drugs, the cross-examination about his subsequent arrest with his codefendant 12 days later at the same location as is involved in the instant matter was proper. In arguing that inquiry into this pending charge was improper, defendant, as does the dissent, proceeds on a faulty premise, i.e., that the questions about defendant's subsequent arrest related to a collateral matter and were intended solely for the purpose of impeaching his general credibility. The inquiries were directly relevant to the defense defendant proffered and thus the People's cross-examination could not be circumscribed by limitations placed on inquiries relative to collateral matters, such as pending criminal charges. (*See, e.g., People v Bennett, supra,* at 468.) Since no impropriety was committed in this regard either by the prosecutor or the trial court and defendant's other claims of error are without merit, we affirm the judgment of conviction.

On November 4, 1992, at 5:55 P.M., Detective Jerry Eng, an undercover police officer with the Manhattan South Narcotics District, approached defendant and Shakira Fleming, standing together, on Ninth Avenue between 37th and 38th Streets in Manhattan and asked if defendant had any "nickels", i.e., five dollar vials of crack cocaine. Defendant answered that he had "dimes", ten dollar vials of crack cocaine, and asked Eng how many he wanted. When Eng said "two", defendant turned to Fleming and told her to give the officer "two". Fleming handed the officer two black-topped vials of crack cocaine in exchange for $20 in prerecorded buy money.

Sergeant Golden, a member of the undercover officer's backup team, who had received Eng's radioed description of

the sellers and the location of the sale, arrested defendant and Fleming minutes later, at the precise location described. Eng subsequently confirmed the identity of both defendant and Fleming as he drove by the arrest scene. Twenty-three black-topped vials of crack cocaine were recovered from Fleming; defendant was found to be in possession of $39, including the prerecorded buy money. Both defendant and Fleming were subsequently jointly indicted for, *inter alia*, criminal sale of a controlled substance in the third degree.

Taking the stand in his own behalf, defendant testified that after seeing a movie at a theater on 42nd Street and Broadway, he was standing in front of a sandwich shop on 38th Street and Broadway, where he had just made a purchase, when Sergeant Golden ordered him against the wall. Speaking on his walkie-talkie, Golden told someone to "bring the girl down", prompting defendant to ask, "What girl are you bringing down?" Other police officers then brought a woman, whom defendant later learned was Shakira Fleming, and stood her next to him against the wall. Defendant testified that he had never seen this woman before.

Similarly, on four occasions during cross-examination, defendant asserted that he had never seen Shakira Fleming before his arrest on November 4, 1992. After this testimony, the court, at a sidebar conference, asked whether the People would elicit from defendant, as had been discussed earlier in the proceedings, that he had been arrested with Shakira Fleming 12 days after his arrest in this case. The prosecutor responded that he intended to defer inquiry into that subject and call a rebuttal witness to testify to the subsequent arrest. The court rejected that proposal, noting that the People "have to give [defendant] an opportunity to respond" before calling a rebuttal witness. Thus, the court ruled, if the prosecutor intended to produce such a witness, he first had to ask defendant "whether he had occasion to see Shakira Fleming again and whether he was arrested twelve days later". The dissent finds that the prosecutor's cross-examination in this area was at the court's direction. The court's sidebar reference to an earlier discussion by the parties concerning the pending charge, however, strongly suggests that the matter was discussed prior to defendant's decision to testify and that the court was merely following up on a problem previously made known to it. Defense counsel registered a general objection only.

The prosecutor then proceeded to ask defendant again if November 4, 1992 was the first time he had ever seen Shakira

Fleming, to which defendant responded affirmatively. After a series of general objections by defense counsel, the prosecutor then asked:

"Q. Isn't it true on November 16th you again were arrested with Shakira Fleming on Ninth Avenue near 38th Street for Criminal Sale of a Controlled Substance in the Third Degree?

"A. Yes.

"Q. So you were arrested twelve days later with her?

"A. Yes."

Other than the court's asking defendant to explain how "it happen[ed] you were arrested on 38th Street and Ninth Avenue twelve days later with the same person you were arrested with on November 4th," no other questions were asked on that subject.

Thus, it is clear, as defense counsel recognized by his general objections, never having argued that the questions as to defendant's subsequent arrest denied defendant his constitutional protection against self-incrimination with respect to a pending charge, that the testimony was not elicited to cast doubt on defendant's general credibility. The dissent concludes that elicitation of the fact that defendant's subsequent arrest was for a crime identical to that for which he was on trial deprived defendant of a fair trial. While the prosecutor's question specified the crime for which defendant and Fleming were subsequently arrested, any error in that regard is unpreserved. The court permitted inquiry as to "whether [defendant] had occasion to see Shakira Fleming again and whether he was arrested twelve days later"; it did not, however, grant, nor did the prosecutor seek, permission to question defendant as to the specific nature of the crime for which he was arrested at that time. Defendant's objection to the "line of questioning" regarding defendant's subsequent arrest, his request for a sidebar and his motion for a mistrial all took place before the prosecutor asked whether defendant had been arrested on November 16 for criminal sale of a controlled substance in the third degree. (The dissent is in error insofar as it concludes that defendant objected to this line of questioning **after** the question was posed to defendant.) We fail to comprehend how defendant's resistance to questions about his subsequent arrest can be viewed as an objection to the question specifying the nature of the crime asked afterwards and apparently not even anticipated at the time of the objection. Rather, as a result of defendant's testimony, his subsequent arrest in the company of

Shakira Fleming was highly relevant to the refutation of his defense, i.e., that he had done nothing wrong when Sergeant Golden stopped him, ordered him against the wall, and called someone on his walkie-talkie to "bring the girl down", a girl defendant had never seen before and, as to whom, he asked Sergeant Golden, "What girl?"

While the general rule is that a prosecutor may not question a defendant concerning pending criminal charges solely to impeach his credibility (*People v Betts*, 70 NY2d 289; *see also*, *People v Bennett*, *supra*, 79 NY2d 464), " '[t]his rule will not * * * preclude prosecutors from inquiry into pending criminal charges if a defendant, in taking the stand, makes assertions that open the door and render those charges relevant for contradiction and response.' " (*People v Lugo*, 202 AD2d 248, 249, quoting *People v Betts*, *supra*, at 295.) And, of course, the manner and extent of cross- and redirect examination are matters entrusted to the sound discretion of the Trial Judge, who is afforded "wide latitude" in his or her rulings. (*People v Sorge*, 301 NY 198, 202.)

Here, defendant's arrest with Shakira Fleming just 12 days after their arrest on November 4, 1992 at the same location was quite relevant and probative to contradict his claim that he had never seen Fleming before. This evidence provided a potent refutation of defendant's testimony that he did not know Fleming as well as to his claim that he visited the area on the prior occasion only to see a movie and suggests that, contrary to his testimony, he had a significant relationship with her and that he knew her at the time of his first arrest.

Nor, as is argued, and as the dissent would hold, is there any basis whatsoever in this record to charge the trial court with impermissibly injecting itself into the cross-examination of defendant and focusing on his credibility, thereby indicating a prosecutorial bias. Initially, we note that defendant has failed to preserve the issue. As to the first two questions the dissent finds improper—those directed to the location of the movie theater—defense counsel raised no objection. With respect to the—as the dissent puts it—"line of questioning [to which defense counsel objected] concerning defendant's subsequent arrest on November 16th," it is clear that the objection was confined to the content of the question, and not to the fact that it was being asked by the court. Nor, under the circumstances of this case, do we discern any reason to exercise our interest of justice jurisdiction to review this issue. In any event, the court's questions, when viewed in context, indicate an interest

in clarifying defendant's unclear answers and moving the proceedings along (*see, People v Yut Wai Tom*, 53 NY2d 44, 57; *see also, People v Walker*, 182 AD2d 731, 732); they are not susceptible of an interpretation that the court believed that defendant was guilty (*cf., People v Grant*, 185 AD2d 896, 897).

We have examined the other issues raised on appeal and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Harold J. Rothwax, J.), rendered April 6, 1994, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and sentencing him, as a predicate felony offender, to an indeterminate term of imprisonment of from $5^{1}/_{2}$ to 11 years, should be affirmed.

Tom, J. (dissenting). At trial, undercover New York City Police Officer Jerry Eng testified that as part of a buy and bust operation being conducted on November 4, 1992, he approached defendant and a female identified as Shakira Fleming as they stood on 9th Avenue between 37th and 38th Streets in Manhattan. The officer allegedly purchased two vials containing crack cocaine, after which he left the scene and radioed his backup team with a report of the transaction and descriptions of defendant and Fleming. Based upon the information contained in the radio transmission, Officer Patrick Golden drove to the scene of the transaction and arrested defendant and Fleming, after which Officer Eng made drive-by confirmatory identifications.

Defendant testified in his own behalf and acknowledged previous convictions, by plea, to criminal possession of a controlled substance in the fifth degree, attempted robbery in the second degree and petit larceny, as well as a past addiction to crack cocaine. Defendant maintained that on the day of his arrest, he had just seen a movie on 42nd Street and had gone to a deli between 38th and 39th Streets on 9th Avenue when he was approached by Officer Golden and directed to stand facing a wall. Defendant averred that a woman, whom he later learned was Fleming, was placed next to him; that he was alone at the time of his arrest; that he did not know Fleming prior to his arrest; and that he saw Fleming with four males on the corner just before the police brought her to stand next to him.

During cross-examination, defendant reaffirmed that he had never seen, and did not know Fleming prior to the time of his arrest. The prosecutor then moved on to another line of

questioning, at which juncture the court called a sidebar. Out of the hearing of the jury, the court noted that it was aware defendant had been arrested with Shakira Fleming on another occasion. The prosecutor stated that the arrest the court referred to had occurred 12 days after the arrest for which defendant was then being tried and that it had taken place between 38th and 39th Streets. The court then asked whether the prosecutor intended to inquire about it, to which the prosecutor responded "Not at this time." The court asked why not, and the prosecutor explained that he was "going to make a motion later on to bring in the witness who was with them at that point." The court replied "There's no reason. You have to give him an opportunity to respond to it before you do that. It seems to me you ought to ask him whether he had occasion to see Shakira Fleming again and whether he was arrested twelve days later." In response to defense counsel's objection, the court stated "You have an objection. Very good."

The sidebar discussion thus having been concluded, the prosecutor asked defendant, in open court, not only whether he was again arrested with Fleming on 9th Avenue, near 39th Street on November 16, 1992, but also whether the arrest was for criminal sale of a controlled substance in the third degree, to which the defendant answered "Yes". The court overruled defense counsel's subsequent objection to the entire line of questioning, denied defense counsel's request for a sidebar on the matter, and denied defense counsel's motion for a mistrial. Thus, contrary to the majority's position, the issue of the specific crime for which defendant and Fleming were arrested on November 16, 1992 was preserved.

After the cross-examination resumed, the prosecutor asked defendant if the subsequent arrest was at the same location. Defendant answered that it wasn't and the court intervened and asked "Well, where was it?" Defendant replied it was on the corner of 38th Street and 9th Avenue and the court then asked "How far was it from where you were arrested in this case?" Defendant answered "Across the street about half a block". The court then inquired "How did it happen you were arrested twelve days later with the same person you were arrested with on November 4th?"

Defendant then embarked upon a lengthy, descriptive response, which the court interrupted by again asking "How did it happen you were on 38th Street and Ninth Avenue twelve days later with Shakira Fleming?" Defendant responded that he met Fleming by chance on the street and that when Flem-

ing asked him for change of a $10 bill, he expressed concern because the last time he was "anywhere near" her, he got arrested. However, defendant claimed that before he could make change, he was arrested again. The court then inquired "With Shakira Fleming" and defendant replied in the affirmative.

While it is clear that defendants who take the stand place their credibility in issue and, thus, may be cross-examined on past criminal acts, cross-examination on a pending criminal charge solely for the purpose of impeaching a defendant's credibility is impermissible (*People v Bennett*, 79 NY2d 464, 468; *People v Betts*, 70 NY2d 289). As the Court of Appeals stated in *Betts*: "Allowing a defendant-witness' credibility to be assailed through the use of cross-examination concerning an unrelated pending criminal charge unduly compromises the defendant's right to testify with respect to the case on trial, while simultaneously jeopardizing the correspondingly important right not to incriminate oneself as to the pending matter." (*People v Betts, supra*, at 295.)

A review of the record reveals that at the court's direction, the prosecutor cross-examined defendant regarding a pending unrelated criminal charge involving the sale of drugs for the sole purpose of impeaching defendant's credibility. Further, and contrary to the People's argument that defendant "opened the door" to questions regarding his later arrest with Fleming, even if defendant's presence with Fleming on November 16th was somehow probative of whether he knew her prior to November 4th, defendant's testimony that he did not know Fleming prior to the November 4th arrest did not open the door to elicitation of the fact that defendant's November 16th arrest was for a crime identical to the one for which he was presently being tried. This, clearly, was sufficiently prejudicial to deprive defendant of a fair trial as it tended to demonstrate defendant's propensity to commit the crime with which he was charged (*People v Mayrant*, 43 NY2d 236, 239; *People v Ortiz*, 156 AD2d 77, 79, *lv denied* 76 NY2d 793). It is well settled that "[o]ne may not be convicted of one crime * * * because he committed another" (*People v Goldstein*, 295 NY 61, 64).

I also find that the Trial Judge impermissibly interjected himself into the case during the cross-examination of defendant and, in the process of doing so, focused on defendant's credibility and indicated a bias in favor of the prosecution. The court asked defendant, who lived in the Bronx, "Why did you go to 42nd Street to see [a movie] instead of seeing it some place in the Bronx?", which elicited the response that defen-

dant considered it "simpler" to see the movie in Manhattan rather than go to a Bronx movie theater. The court also asked defendant if he recalled the name of the movie theater, which elicited a negative response, and "How did it happen you were arrested twelve days later with the same person you were arrested with on November 4th?", which question was repeated after defendant gave a narrative answer. Further, the court asked defendant the final question on cross-examination, whether he had been arrested again with Shakira Fleming, which elicited an affirmative response.

The foregoing cross-examination by the Trial Judge, which included repetitive questioning, rather than being clarifying in nature (*see generally*, *People v Rivera*, 201 AD2d 385, *lv denied* 83 NY2d 914; *People v Lewis*, 188 AD2d 346) conveyed to the jury the court's opinion that defendant lacked credibility and was guilty (*People v Yut Wai Tom*, 53 NY2d 44, 57; *People v Rogers*, 216 AD2d 591; *People v Grant*, 185 AD2d 896). I reject the People's claim that this issue is not preserved for our review as defense counsel specifically, and repeatedly, objected to the line of questioning concerning defendant's subsequent arrest on November 16th, which objections (and a motion for a mistrial and a request for a sidebar) were all denied. Further, since defense counsel had already been told to sit down and lower his voice, any further objection to the Judge's questions would have been all the more difficult for fear that it would have antagonized the Trial Judge (*People v Yut Wai Tom*, *supra*, at 55). In any event, had it not been preserved, I conclude that the matter should be reviewed in the interest of justice.

Accordingly, I vote to reverse defendant's judgment of conviction and remand the matter for a new trial.

KUPFERMAN and WILLIAMS, JJ., concur with SULLIVAN, J. P.; TOM, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered April 6, 1994, affirmed.