(May 7, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TROY JACKSON, Appellant. [641 NYS2d 840] —Judgment of the Supreme Court, New York County (Thomas Galligan, J.), rendered August 4, 1993, after a jury trial, convicting defendant of attempted murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him, as a second felony offender, to concurrent terms of 10 to 20 years and 5 to 10 years, respectively, and to a concurrent

term of $1^1/_2$ to $4^1/_2$ years for violation of probation, reversed, on the law, and the matter remanded for a new trial.

Defendant Troy Jackson was on apparently friendly terms with Manhattan drug dealers Dino Bolden and John Simmons in early 1982, and occasionally worked for Simmons bagging cocaine. On February 12, 1992, defendant appeared at the door of Simmons's apartment on West 137th Street and, speaking briefly, lured him into the apartment corridor. Bolden, who had been lying in wait nearby, shot Simmons three times, wounding him severely but not fatally. Bolden was arrested on February 17, 1992; defendant was arrested three days later. Defendant and Bolden were each charged with attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second and third degrees, and were tried separately.

Prior to trial in this matter, defendant was arrested on the charge of armed robbery for an incident occurring in April 1993, fourteen months after the Simmons shooting. The prosecutor gave notice of his intention to introduce evidence of the pending armed robbery charge in the event that the defendant raised the affirmative defense of duress in the instant matter.

In fact, defendant relied exclusively on a duress defense at trial. According to defendant's trial testimony, Bolden and members of the "Lynch Mob", a local gang, compelled defendant at gunpoint to lure Simmons into the hallway of his apartment; defendant had no wish to harm Simmons and attempted unsuccessfully to warn him of the danger in the seconds before the shooting; defendant fled from the apartment as the shooting began. On cross-examination, defendant testified that he did not use a gun at the shooting, and in fact had never used a gun.

Following this cross-examination, the People called as a rebuttal witness Claudio Placencio, who testified that defendant and two companions had robbed him of his car at gunpoint on April 8, 1993, and that defendant had wielded a gun during the robbery. At the time of this testimony, defendant had been charged with the Placencio robbery, but had not yet been tried. In its subsequent instructions to the jury, the trial court charged that Placencio's testimony should be considered only with reference to defendant's defense of duress and "whether or not the defendant, in act [sic], ever possessed a gun."

Following trial, defendant was found guilty of attempted murder in the second degree and criminal possession of a

weapon in the second degree. He was sentenced, as a second felony offender, to concurrent terms of 10 to 20 years and 5 to 10 years, respectively, and to a concurrent term of $1^1/_2$ to $4^1/_2$ years for violation of probation. Defendant appeals, arguing, *inter alia*, that the introduction of Placencio's testimony concerning the armed robbery charge in rebuttal to his duress defense was immaterial and prejudicial and deprived him of a fair trial. We agree.

It is well established that the People may dispute an affirmative defense of duress by introducing collateral evidence of a defendant's criminal disposition or inconsistent intent (*People v Calvano*, 30 NY2d 199, 205-206). In general, such evidence may include incidents which occurred both before and after the subject of the trial (*People v Ingram*, 71 NY2d 474), and may even address criminal incidents for which the accused has not yet been tried (*see, e.g., People v Betts*, 70 NY2d 289, 295; *People v Lugo*, 202 AD2d 248). However, evidence of such collateral issues should be excluded "when its relevance to disposition is remote or its probative effect so doubtful as to be outweighed by the prejudice its reception will engender" (*People v Calvano*, 30 NY2d, *supra*, at 206). The danger of prejudice to the defendant, which arises wherever evidence of uncharged criminal conduct is admitted into evidence (*see, People v Molineux*, 168 NY 264, 291-294), is particularly acute where that evidence takes the form of subsequent criminal conduct for which the defendant has not yet been tried.

With this in mind, we turn to the facts of the instant case and, more particularly, to the context in which testimony about the robbery charge was introduced at trial. From our review of the record,* it appears that the prosecution's questions about the defendant's use of guns were, at best, only marginally rele-

---

* The purported relevance of the robbery charge is rooted in the cross-examination of the defendant as to whether defendant intended to harm Simmons on February 12:

"PEOPLE: * * * Mr. Jackson, you mentioned earlier you didn't intend to commit the actions at John Simmons' house? Right?

"JACKSON: Right.

"PEOPLE: Was that because you didn't want to do violence or you didn't want to participate in violence?

"JACKSON: No. That's because I had no problem with Baby John [Simmons]. I felt I was being forced to do things I didn't want to do. I didn't want to do it. I didn't want to go over there. I didn't have no reason to go over there. Trying to hurt anybody.

"PEOPLE: Is that because you didn't want to use a gun or you didn't like to use guns?

"JACKSON: I never used a gun.

"PEOPLE: I'm sorry. You've never used a gun?

vant to the issues addressed at trial. Although defendant was charged with possession of a weapon in this case, that charge arose solely from the allegation that he acted in concert with Bolden, and not from any charge of personal use of a gun. Likewise, defendant's duress defense did not rest upon an assertion or showing that defendant never used a gun after the Simmons shooting. Under these circumstances, the prosecution's inquiry into the defendant's subsequent use of guns—and the defendant's statement that he never used a gun—ranged beyond the line of questioning appropriate for rebuttal of defendant's testimony and did not relate to any affirmative fact required for the duress defense (*see, People v Pavao*, 59 NY2d 282, 289; *People v Crandall*, 67 NY2d 111, 118-119; *People v Rivers*, 109 AD2d 758).

Moreover, there are significant differences between the defendant's purported conduct during the 1992 and the 1993 criminal incidents. The Simmons incident involved attempted murder, while the Placencio incident involved auto robbery; the 1992 charge addressed participation in a drug enterprise, while the 1993 incident did not; the 1992 charge involved participation in a plot with Bolden and members of the Lynch Mob gang; there is no indication that gang members were involved in the 1993 incident. While it is conceivable that defendant's alleged possession of a gun in an automobile robbery with two companions in April 1993 might reflect defendant's criminal disposition or intent to participate in a drug-related murder, without a gun, in concert with Bolden fourteen months earlier, this connection is tenuous and remote.

Under these circumstances, we find that the probative value of the evidence of the Placencio robbery to the Simmons shooting was minimal, while its potential for prejudice was quite substantial. Consequently, admission of Placencio's testimony was error (*see, People v Espada*, 205 AD2d 332).

---

"JACKSON: No. But, nobody never said here, 'Here is a gun for you to use.' A gun wasn't even a question in the story. Had nothing to do with me using any kind of gun. I never was asked to use a gun. I never was told to use a gun. Never. I was just there. I was being used to knock on the door, to lure somebody in the hallway.

"PEOPLE: Mr. Jackson, I'm asking you. You mentioned a moment ago that you've never used a gun. Do you mean, on that date? Or, you've never used a gun?

"JACKSON: I've never used a gun. Never, ever.

"PEOPLE: Up until today?

"JACKSON: Never used a gun. Today, either.

"PEOPLE: But, in your entire life, you have never used a gun? I want to be clear on this?

"JACKSON: I have never used a gun. Never."

Upon our further review of the record, and in light of the importance of the claim of duress to the defense in this matter, we cannot conclude that the erroneous introduction of rebuttal evidence against defendant was harmless. Consequently, we reverse and remand for a new trial. Concur—Murphy, P. J., Wallach and Ross, JJ.

Kupferman and Williams, JJ., dissent in a memorandum by Kupferman, J., as follows: The defendant does not sustain his duress defense and he does not unequivocally deny being a part of the attempted murder, but merely indicates that his participation was half-hearted (*see,* excerpt of transcript in majority mem, n).

Moreover, only recently in *People v Blakeney* (219 AD2d 10, 11), we held that where the inquiries were relevant to the defense proffered, they could "not be circumscribed by limitations placed on inquiries relative to collateral matters, such as pending criminal charges."

The defense is duress; that defendant did not, would not, and could not use and never would use a gun. Yet, we have evidence that defendant had wielded a gun in an armed robbery of an automobile.

We should affirm.