Darrick SIDES, Petitioner,

v.

Daniel SENKOWSKI, Respondent.

No. 01–CV–6106L.

United States District Court,
W.D. New York.

Aug. 4, 2003.

Jeffrey M. Jayson, Getzville, NY, for plaintiff.

Loretta S. Courtney, Esq., Monroe County District Attorney's Office, Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Petitioner Darrick Sides ("Sides") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on murder and attempted robbery charges. For the reasons set forth below, Sides's § 2254 petition is dismissed.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from the botched attempted robbery of Elvis Martinez as he was opening his grocery store on the morning of September 27, 1995. Ten year-old Jacquan Moore, who witnessed the crime as he was walking to school, implicated three individuals in the fatal shooting of Martinez: Sides and Johnny Brown, whom Moore knew from the neighborhood, and a third person whom he did not know. Brown fled via train and was apprehended later that day in Manhattan. Sides was arrested at his home in Rochester on September 28, 1995. Freddie Stokes, the third participant, was arrested on October 17, 1995; he subsequently admitted his involvement in the crime to the police and implicated Sides as the gunman.

By indictment filed December 5, 1995, the Monroe County Grand Jury charged Sides with one court of intentional murder in the second degree, one count of felony murder, and two counts of attempted robbery. After a jury trial in Monroe County Court (Connell, J.), Sides was convicted on all counts in the indictment and sentenced

to concurrent terms of imprisonment, the longest of which was 25 years to life.

The Appellate Division, Fourth Department unanimously affirmed his conviction in a memorandum decision entered October 1, 1999. *People v. Sides*, 265 A.D.2d 907, 697 N.Y.S.2d 208 (4th Dept.1999). The New York Court of Appeals denied leave to appeal on December 1, 1999. This federal habeas corpus petition followed.[1]

## DISCUSSION

### *The Review Standard*

Because the petition, which was filed on February 27, 2001, postdates the enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254 govern this proceeding. *See Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). When Congress enacted AEDPA, it significantly curtailed the role of federal courts in reviewing petitions filed by state prisoners. *Id.* In order to obtain habeas relief under the amended § 2254, Sides must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was "contrary to" or involved an "unreasonable application of" clearly established Supreme Court precedent, or resulted in a decision that was based on an "unreasonable determination of facts" in light of the evidence presented in State court. 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. at 375–376, 120 S.Ct. 1495. On habeas review, the federal court must presume that the state courts' factual findings are correct and may be rebutted only upon a showing of clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Merits of the Petition*

### 1. Admission of Threats Made to Testifying Witness by Petitioner

Sides contends that the trial court improperly allowed prosecution witness Cedric Wright ("Wright") to testify that, while Wright was waiting in the holding area with Sides, Sides uttered a statement to the effect of, "[i]f I'm blessed with this crime, we're going to visit you." Trial Tr. at 513; 532. The trial court ruled that the statement was probative in that it "sound[ed] of a threatening nature and would reasonably believed to be a threatening statement." *Id.* at 514.

 As a general rule, state evidentiary rulings do not implicate federal law and are therefore not appropriate for review by federal courts unless the ruling renders the trial fundamentally unfair implicating a due process violation. *See Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998). An erroneous evidentiary ruling renders a trial fundamentally unfair only if the ruling was "material," that is, in light of the entire record, a contrary ruling would have created a reasonable doubt where none otherwise existed. *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir.1988). Instead, such rulings are generally left to the discretion of the trial court. *Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

In the present case, however, Sides does not even make a threshold showing that the trial court's ruling was erroneous under state law. Courts will allow introduction of evidence of a defendant's conduct that reveals a guilty mind, including evidence of coercion and harassment of a witness. *See, e.g., People v. Sherman*, 156

---

**1.** Respondent does not raise the failure to exhaust with regard to any of the eight claims raised in the instant petition. I agree that each claim is fully exhausted and is properly before this Court on habeas review. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (*citing Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991)).

A.D.2d 889, 550 N.Y.S.2d 109 (3d Dept. 1989), *lv. denied* 75 N.Y.2d 970, 556 N.Y.S.2d 255, 555 N.E.2d 627 (1990) ("Evidence that a defendant threatened a witness to change his testimony is highly probative and properly admitted as indicative of consciousness of guilt."); *People v. Bennett*, 79 N.Y.2d 464, 583 N.Y.S.2d 825, 593 N.E.2d 279 (1992); *United States v. Mickens*, 926 F.2d 1323 (2d Cir.1991) (holding that evidence that the defendant held his hand in the shape of a gun as the witness entered the courtroom was admissible); *accord United States v. Stewart*, 112 F.3d 507 (2d Cir.1996).

■ Here, it was clearly within the trial court's discretion to permit prosecution witness Wright to testify that Sides asked him not to testify and threatened him in the hallway outside the courtroom before he gave testimony since this evidence is probative of Sides's state of mind. Numerous courts have held, as the trial court did here, that evidence of a defendant's threatening behavior toward a witness was relevant and admissible. *See, e.g., People v. Bennett*, 79 N.Y.2d 464, 583 N.Y.S.2d 825, 593 N.E.2d 279; *United States v. Mickens*, 926 F.2d 1323. In light of these decisions, the trial court was well within its discretion to determine that this evidence was relevant, and petitioner's claim must be denied. *See Herrera v. Artuz*, 171 F.Supp.2d 146, 149–50 (S.D.N.Y.2001) (denying habeas claim based on trial court's admission of evidence of an alleged threatening gesture petitioner made to one of the witnesses). This claim affords no basis for habeas relief.

### 2. Identification Testimony

In his petition, Sides asserts that the "[c]ourt erred in allowing an in court *id.*

(sic) after people (sic) failed to move at suppression hearing." Pet'n at 5. This claim arises out of the prosecution's failure to proceed with a pre-trial *Wade* [2] hearing with regard to witness Cedric Wright's photo array identification of Sides. Sides argues that this precluded the trial court from admitting Wright's in-court identification of Sides absent a showing of good cause.

On direct appeal, the Appellate Division held that

> [t]he record supports the court's determination that the ... witness [who made the identification] was familiar with defendant. Thus, there was no risk that police suggestion could lead to a misidentification, and the identification of defendant through a photo array was confirmatory and the notice and hearing requirements of CPL 710.30 did not apply[.]

*Sides*, 265 A.D.2d at 907, 697 N.Y.S.2d 208 (citations omitted).

■ The primary basis for Sides's identification claim appears to be the prosecution's inability to show "good cause" for its failure to proceed prior to trial with a hearing as required under C.P.L. § 710.30, which is an alleged error of state law. *See* App. Div. Br. at 14–16, Ex. F at 32–34 (citing *People v. Cruz*, 88 A.D.2d 621, 450 N.Y.S.2d 37 (2d Dept.1982) (failure to show good cause for not proceeding with a hearing required under C.P.L. § 710.30 was grounds for reversal)). However, "[i]t is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 181 (2d Cir.2002)

---

**2.** In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that in order to protect a defendant's Sixth Amendment rights the trial court must ascertain prior to trial whether a witness's identification testimony is tainted by an impermissibly suggestive identification procedure.

(citing 28 U.S.C. § 2254; *Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. 475).[3]

After defense counsel objected to Wright's in-court identification of Sides during his direct testimony and moved for a mistrial, it became apparent that there had been some confusion during pre-trial proceedings on this issue; both counsel and the trial court mistakenly understood that the People were *not* going to proceed at trial with any identification testimony from Wright. The People apparently failed to give notice of such intent. Trial Tr. at 585–605. As an alternative remedy to granting a mistrial, the trial court then conducted a *Rodriguez* hearing outside the presence of the jury on the confirmatory nature of the identification. *Id.* at 702–10, 583 N.Y.S.2d 814, 593 N.E.2d 268.

I find that under the circumstances of this case, Sides has not made a threshold showing that the state courts' decision constituted error under New York law, which provides that the trial court may dispense with a *Wade* hearing if the identification is merely "confirmatory" because the parties knew each other previously. *See People v. Rodriguez*, 79 N.Y.2d 445, 453, 583 N.Y.S.2d 814, 593 N.E.2d 268 (1992) ("To summarily deny a *Wade* hearing, the trial court had to conclude that, as a matter of law, [the identifying witness] knew defendant so well that no amount of police suggestiveness could possibly taint the identification.").

■ Here, Wright testified that he had known Sides since the summer of 1994 and that they used to "hang out" together "a lot." Trial Tr. at 707–08. Tellingly, Sides did not meaningfully challenge Wright's acquaintance with him on direct appeal. *See* Appellate Division Brief at 14, Ex. F. at 32 ("in spite (sic) a lack of evidence regarding both the procedures and the prior knowledge, the Court rejected the request of the Appellant for a mistrial."). On this record, Sides was not entitled under state law to a *Wade* hearing regarding Wright's identification of him. *See Rodriguez*, 79 N.Y.2d at 450, 583 N.Y.S.2d 814, 593 N.E.2d 268 ("The [confirmatory] exception may be confidently applied where the protagonists are family members, friends or acquaintances[.]"). In any event, the hearing held by the Court during trial demonstrated that Wright knew Sides and there was no likelihood of misidentification. I find that this claim affords no basis for habeas relief.

### 3. Introduction of Photograph of Victim

Sides argues that the admission of a photograph depicting Martinez after receiving the gunshot wound to his head was inflammatory and prejudiced his right to a fair trial. In rejecting this claim, the Appellate Division determined that "[t]he court did not abuse its discretion in admitting in evidence a photograph of the murder victim." *Sides*, 265 A.D.2d at 907, 697 N.Y.S.2d 208 (citations omitted).

**3.** The Supreme Court never explicitly has held that there is a *per se* constitutional requirement compelling an evidentiary hearing with regard to witness identification of a defendant, nor has it clearly defined the circumstances under which a pre-trial hearing is constitutionally necessary. *See Watkins v. Sowders*, 449 U.S. 341, 349, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981); *see also Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony"). I note that New York's Criminal Procedure Law imposes a more stringent standard than the Federal doctrine regarding challenges to impermissibly suggestive identification procedures; this fact bears significantly on the determination of whether the state courts' decision contradicted or unreasonably applied clearly established Federal law.

Under New York law, the trial court judge has broad discretion in determining the admissibility of photographs. Demonstrative or physical evidence is generally admissible if, for instance, "it tends to prove or disprove a disputed or material issue." *People v. Pobliner,* 32 N.Y.2d 356, 369, 345 N.Y.S.2d 482, 298 N.E.2d 637 (1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 110 (1974) (citations omitted). Accordingly, photographs of homicide victims, even if "gruesome and ... tend[ing] to arouse passion ... against the defendant in the minds of the jury," *id.* at 369–70, 345 N.Y.S.2d 482, 298 N.E.2d 637, "should be excluded only if their sole purpose is to arouse the emotions of the jury and to prejudice the defendant." *id.* at 370, 345 N.Y.S.2d 482, 298 N.E.2d 637.

Here, the photograph was relevant in that it showed that the gunshot would was inflicted at close range. It thereby was probative of the fact that the shooting was intentional, an essential element of one of the murder charges against Sides. *See* P.L. 125.25(1); *see also Rivera v. Scully,* 1993 WL 454209, at *4 (S.D.N.Y. Nov. 2, 1993), *aff'd,* 40 F.3d 1237 (2d Cir. 1994) (denying habeas claim based on admission of allegedly prejudicial photograph where it disproved petitioner's justification defense and reinforced proof of his intent by showing the extent of the beating which victim received at petitioner's hands). Permitting the jury to view the photographs of the murder victim, then, was not erroneous under state evidentiary principles. Nor did it violate Sides's constitutional rights. "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." *Dunnigan,* 137 F.3d at 125 (quoting *Estelle v. McGuire,* 502 U.S. at 69, 112 S.Ct. 475).

### 4. Improper Cross–Examination

### a. Danielle Robinson

On direct appeal, the Fourth Department rejected, without comment, Sides's contention that the trial court improperly allowed the prosecutor to cross-examine Danielle Robinson regarding her failure to report promptly the fact that Johnny Brown and Freddie Stokes allegedly had confessed to shooting Martinez. *Sides,* 265 A.D.2d at 907, 697 N.Y.S.2d 208.

The New York Court of Appeals has held that "[t]here is nothing inherently improperly about cross-examining a defense witness concerning his failure to come forward." *People v. Dawson,* 50 N.Y.2d 311, 321, 428 N.Y.S.2d 914, 406 N.E.2d 771 (1980). Similarly, under the Federal rules, any witness is subject to probing cross-examination (subject to certain limitations) that is designed to test the witness's credibility. *Thomas v. Scully,* 854 F.Supp. 944, 959 (E.D.N.Y.1994) (citing Fed.R.Evid. 607) ("The credibility of a witness may be attacked by any party, including the party calling the witness."). Although a witness has no duty to report exculpatory information to the police, the fact that the witness waits until the time of trial to disclose such evidence " 'is a factor a jury should consider in assessing the weight to be given to the testimony of [the] witness.' " *Thomas,* 854 F.Supp. at 960 (denying habeas relief) (quoting *Brown v. Henderson,* 1985 WL 313, at *8 (S.D.N.Y. Feb. 28, 1985)); *see also People v. Dawson,* 50 N.Y.2d at 319, 428 N.Y.S.2d 914, 406 N.E.2d 771.

Moreover, the prosecutor laid a proper foundation for the challenged cross-examination of Robinson, who acknowledged that she was equally "close" to Sides, Brown, and Stokes but rather inexplicably claimed that she would not help them out. Trial Tr. at 803; *Dawson,* 50 N.Y.2d at 322 n. 4, 428 N.Y.S.2d 914, 406 N.E.2d 771 ("In

most cases, the District Attorney may lay a 'proper foundation' for this type of cross-examination by first demonstrating that the witness was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities."). Thus, Sides has failed to make a threshold showing of error either under relevant New York or Federal law.

### b. Shetaika Hudson

■ Respondent argues that Sides is procedurally barred from pressing his claim stemming from the allegedly improper cross-examination of Shetaika Hudson due to trial counsel's failure to object at trial and preserve the issue for review. In the present case, there has been a procedural bar since the Appellate Division "explicitly invoke[d] a state procedural bar rule as a separate basis for decision." *Harris v. Reed*, 489 U.S. 255, 264, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).[4] This procedurally defaulted claim can only be reviewed on federal habeas if Sides makes an adequate showing of cause and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 748–49, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Sides does not specifically plead cause or prejudice to excuse the default in his petition. Here, Sides is unable to establish prejudice based on counsel's failure to object to the prosecutor's cross-examination of Hudson. Even if counsel had objected to the comments, Sides's challenge would have proven fruitless on appeal. *See Flores v. Keane*, 211 F.Supp.2d 426, 435 (S.D.N.Y.2001) (counsel failed to preserve objection to prosecutor's comments; petitioner unable to establish prejudice to excuse procedural default where state court held that if it were to consider claim, it would find it unmeritorious). Because Sides has not established prejudice resulting for the default, he cannot fulfill the two-part test under *Coleman*, 501 U.S. at 748–49, 111 S.Ct. 2546. Therefore, I decline to consider if there was any cause for the alleged violations of federal law. *Cf. Fernandez v. Leonardo*, 931 F.2d 214, 217 (2d Cir.), *cert. denied*, 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991) (determination that petitioner lacked cause for default eliminates need to determine prejudice). This claim is procedurally barred from federal habeas review.

### 5. Improper *Sandoval* Ruling

Sides asserts that the trial court's erroneous *Sandoval*[5] ruling prejudiced his right to a fair trial. However, a habeas petitioner's failure to testify is "fatal to any claims arising out of a *Sandoval*-type ruling" because absent such testimony, a court has no "adequate non-speculative basis upon which to assess the merits of the claim." *Peterson v. LeFevre*, 753 F.Supp.

---

**4.** The Appellate Division found that the claim was "not preserved for our review (*see* CPL 470.05[2] ), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15[6][a] )." *Sides*, 265 A.D.2d at 907, 697 N.Y.S.2d 208. The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground. *See, e.g., Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d

Cir.), *cert. denied*, 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485–92, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The Appellate Division therefore was justified in relying on New York's contemporaneous objection rule to hold that Sides's cross-examination claim was not preserved for review.

**5.** *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

518, 521 (S.D.N.Y.), *aff'd*, 940 F.2d 649 (2d Cir.1991) (*citing Luce v. United States*, 469 U.S. 38, 41–42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)); *see also, e.g., Shannon v. Senkowski*, 2000 WL 1683448, at *6–7 (S.D.N.Y. Nov. 9, 2000); *Beverly v. Walker*, 899 F.Supp. 900, 909 (N.D.N.Y. 1995). Here, Sides elected not to testify at trial. This claim, therefore, is not cognizable on habeas review.

### 6. Refusal to Charge Lesser Included Offenses

■ Sides asserts that he is entitled to have his conviction overturned because the trial court improperly refused to charge manslaughter in the first and second degrees and criminally negligent homicide as lesser included offenses of intentional murder in the second degree. This claim is not cognizable in a federal habeas review because it does not implicate a federal constitutional right. *See Estelle v. McGuire*, 502 U.S. at 71–72, 112 S.Ct. 475. Neither the Supreme Court nor the Second Circuit has held that a court's failure to instruct a jury on lesser included offenses in a non-capital cases is a constitutional issue that may be considered in a habeas petition. *Knapp v. Leonardo*, 46 F.3d 170, 179 (2d Cir.1995); *accord Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir.1996) (*per curiam*); *see also Parks v. People*, 2003 WL 1396440, at *1 (S.D.N.Y. Mar. 19, 2003).

### 7. Ineffective Assistance of Counsel

Sides argues that defense counsel committed three errors which, considered individually or cumulatively, had a "substantial and injurious effect on [his] fundamental right to a fair trial." Docket ("Dkt.") # 7, Traverse ("Trav.") at 6. At the outset, I note that the showing required to prevail on a claim of ineffective assistance of counsel is exceedingly high: a petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies of his counsel's performance were prejudicial to his defense." *Strickland v. Washington*, 466 U.S. 668, 690, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Sides does not come close to meeting this standard.

### a. Failure to Object to *Sandoval* Ruling

■ Under New York law, the failure to file a *Sandoval* motion is not in itself sufficient to constitute ineffective assistance of counsel. *See, e.g., People v. Mackey*, 155 A.D.2d 297, 547 N.Y.S.2d 213 (1st Dept.1989). Consequently, it does not follow that defense counsel's failure to object to the compromise *Sandoval* ruling fashioned by the trial court is an attorney error so egregious as to amount to a denial of the Sixth Amendment right to counsel.

### b. Failure to Object to Witness Outburst

■ During cross-examination, after he was told for the third time that he needed to answer verbally, Moore yelled "yes" into the microphone on the witness stand. Trial Tr. at 383. Contrary to Sides's allegation in his petition, defense counsel thereafter moved for a mistrial which was denied because the trial court found that it was just a routine instance of a witness becoming upset on the stand. When viewed in the context of the record, Moore's reaction was not a "blood curdling" or "chilling" emotional outburst as described in Sides's appellate brief. Rather, it was the understandably defiant reaction of a little boy surrounded by intimidating strangers asking him to remember a day he likely would just as soon forget. As this is not a situation where a curative instruction would have been warranted, I find that defense counsel's failure to request one was not error. In any event, defense counsel discussed the incident dur-

ing summation, thereby ameliorating any prejudice which may have resulted from Moore's outburst. Tr. at 873–74.

### c. Failure to Elaborate on Request for Trial Order of Dismissal

 Sides concedes that defense counsel moved to dismiss the case at the close of the proofs; however, he faults his attorney for failing "to elaborate on the basis of his request for dismissal, the lack of credible evidence submitted by the People[.]" Trav. at 5. Where, as here, a motion on such grounds likely would not have succeeded, defense counsel's failure to make the motion does not constitute ineffective assistance because no prejudice inures to the petitioner in such a case. *Cf. Erdheim v. Greiner,* 22 F.Supp.2d 291 (S.D.N.Y. 1998) ("Since petitioner has not proved that he had a meritorious speedy trial claim, there is no reasonable probability that his counsel's failure to raise the motion affected the outcome of the case."). In any event, defense counsel moved to dismiss based on a lack of insufficient corroboration from the testifying co-defendant. Trial Tr. at 774–75. His failure to move to dismiss on the alternative ground urged by Sides was not error, much less error of constitutional magnitude.

In sum, I find that Sides's allegations, taken singly or together, do not amount to attorney ineffectiveness but rather are hypercritical attacks on his counsel's more than adequate performance at trial. I have reviewed the entire transcript, and I agree with the Appellate Division's finding that Sides's "attorney provided meaningful representation." *Sides,* 265 A.D.2d at 908, 697 N.Y.S.2d 208 (citing *People v. Baldi,* 54 N.Y.S.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981)). As the state court's decision was not an unreasonable application of clearly established Supreme Court precedent, Sides's ineffective assistance of counsel claim affords no ground for habeas relief.

### 8. Insufficiency of the Evidence

 A petitioner is not entitled to habeas relief on a claim that the evidence against him was insufficient to support his conviction unless, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On habeas review, the court is not permitted to " 'make its own subjective determination of guilt or innocence.' " *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Herrera,* 506 U.S. at 402, 113 S.Ct. 853) (citations omitted).

 At trial, the People presented evidence establishing that Martinez was shot at close range in the head during an attempted robbery which was witnessed by Jacquan Moore as he was walking to school that morning. Moore saw Sides and Johnny Brown (both of whom he knew from the neighborhood) along with another young man whom he did not know standing around behind Martinez's store. He then saw Sides pull a gun and enter the store accompanied by the unknown man, as Brown waited for them behind a dumpster. Trial Tr. at 376–77. Upon hearing a gunshot moments later, Moore ran to his school. *Id.* at 377–78.

Jones, the other eye-witness, testified that he saw two men whose faces were obscured by their hooded jackets walking up Finney Street toward the victim's market. He heard one or two shots and "two or three seconds" later, he saw both men flee. He testified that as they were run-

ning away, the man wearing the black jacket dropped a "shiny," "silver colored" gun. Unlike Moore, Jones did not see a third perpetrator behind the dumpster. *Id.* at 426–30, 113 S.Ct. 853.

Stokes, who allegedly was initially present with Sides but did not enter the store, testified that he, Johnny Brown, and Sides agreed to rob Martinez. *Id.* at 718–20. According to Stokes, Brown and Sides each had a gun-Brown, a .38 caliber and Sides, a .22 caliber. *Id.* at 740. As Stokes waited for them behind the store, he heard a gunshot and saw Sides and Brown run outside. Stokes testified that after the incident, Sides was angry that they had come up empty in the robbery and said that it was he who "busted" (*i.e.*, shot) Martinez. *Id.* at 736–37; 739 Stokes also testified that Brown dropped a "shiny, chrome" gun by the dumpster. *Id.* at 729; 741.

Cedric Wright testified that Sides admitted that he had participated in the robbery but claimed did not have a gun; Stokes had the .22 caliber gun and Brown had the .38 caliber gun. Wright testified that Sides said that "Kilo [*i.e.*, Brown] smoked him," meaning that Brown had shot Martinez. *Id.* at 542.

Here, the "jury's decision was largely a matter of choosing whether to believe [the] defense's version of the events or to believe the State's witnesses. . . . We cannot say that no rational jury could have bound guilty beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir.1981); *accord, e.g., Ferguson v. Walker*, 2002 WL 31246533, at *9 (S.D.N.Y. Oct. 7, 2002).

■ On habeas review, this Court may not reassess the jury's finding of credibility and " 'must presume that the jury resolved any questions of credibility in favor of the prosecution.' " *Simpson v. Portuondo*, 2001 WL 830946, at *8 (S.D.N.Y. July 12, 2001) (quoting *Vera v. Hanslmai-*

*er*, 928 F.Supp. 278, 284 (S.D.N.Y.1996) (quotation omitted)). *See also, e.g., Gruttola*, 639 F.2d at 928 (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony).

■ As far as Sides's allegation that there was no physical evidence linking him to the shooting, there is no requirement that eyewitness testimony be corroborated by physical evidence. *See, e.g., United States v. Gonzalez*, 110 F.3d 936, 940–41 (2d Cir.1997) (where the government's case is based primarily on eyewitness testimony, "any lack of corroboration [with physical evidence] goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal.") (internal quotations omitted) (citation omitted).

Here, however, there was physical evidence recovered. The police recovered the weapons used in the crime-a .22 caliber gun and .38 caliber gun-when they apprehended Brown. Trial Tr. at 659. Martinez was killed by one bullet to the head from a .22 caliber gun, and a .22 caliber casing found at the scene was determined to be consistent with having been fired from the .22 caliber gun recovered from Brown. *Id.* at 681. Finally, Moore saw Sides enter the store holding a dark-colored gun-*i.e.*, the .22 caliber gun. (One of the police detectives confirmed that the .38, which Moore saw Brown drop on the ground, was the "[s]ilver gun.") *Id.* at 659. Accordingly, Sides's insufficiency claim based on an alleged lack of physical evidence is without merit. *See, e.g., Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994).

For the foregoing reasons, I find that the Appellate Division's decision that the "verdict [was] not against the weight of the evidence," 265 A.D.2d at 907, 697 N.Y.S.2d

**660**

208,[6] was neither contrary to established federal law nor based on an unreasonable determination of the facts. *See, e.g., Garvey v. Kelly,* 104 F.Supp.2d 169, 172–73 (W.D.N.Y.2000) (applying AEDPA review standard to insufficiency of evidence claim); *Simmons v. Mazzuca,* 2001 WL 537086, at *7–9 (S.D.N.Y. May 21, 2001) (same). Therefore, Sides is not entitled to habeas relief on his insufficiency of the evidence claim.

## CONCLUSION

For the reasons stated above, the petition of Darrick Sides for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because Sides has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253.

IT IS SO ORDERED.

---

**6.** A challenge to a verdict based on the weight of the evidence differs from one based on the sufficiency of the evidence: "[T]he 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." *Garbez v. Greiner,* 2002 WL 1760960 at *8 (S.D.N.Y. July 30, 2002) (citing *People v. Bleakley,* 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987)). Although Sides raised both a weight of the evidence argument as well as an insufficiency of the evidence claim on direct appeal, the Appellate Division only addressed the weight of the evidence claim in its decision and did not include a "catch-all" phrase disposing of any remaining claims. However, I find that in denying the weight of the evidence claim, the Appellate Division implicitly decided Sides's insufficiency of the evidence claim on the merits. *See Bleakley,* 69 N.Y.2d at 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (in determining whether verdict is against the weight of evidence, the appellate court's analysis proceeds beyond asking whether there is any valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury to weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony at trial). As the state court's decision constitutes an adjudication on the merits, it is subject to AEDPA's standard of review. *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).