◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAY CARTER, Appellant. [856 NYS2d 270]—

Spain, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered June 30, 2005, upon a verdict convicting defendant of the crime of burglary in the second degree.

Following a jury trial, defendant was convicted of burglary in the second degree and sentenced, as a second felony offender, to a prison term of 15 years, with five years of postrelease supervision and restitution. The conviction stems from evidence that, on October 12, 2004, he entered the upstairs apartment occupied by the owner of a two-family home in the City of Schenectady, Schenectady County without permission or any right to do so by using a ladder taken from a nearby house and prying open an upstairs porch window. Defendant, an acquaintance of the female tenant (hereinafter the tenant) who had recently moved into the first floor apartment, had visited the tenant numerous times and helped with repairs, and defendant was aware that the owner was usually out of town on business during the week. The tenant heard noises upstairs around 2:00 P.M. and—aware that the owner was out of town but unaware that it was defendant who was upstairs—alerted police. After repeatedly announcing their presence and unsuccessfully attempting to gain entry (all doors to the upstairs apartment were locked), police entered and found defendant hiding under a bed with the owner's keys, which had been stored in a cabinet. Defendant was immediately arrested and, upon her return several days later, the owner discovered that numerous items were missing, including cash, power tools, electronic equipment, and CD and DVD collections, and that a can of food had been cooked on her stove. Defendant testified, offering innocent explanations for his nighttime entry and presence (that the tenant had given him permission) and intent (to repair the malfunctioning furnace), and attempted to implicate the tenant and her allegedly drug-related acquaintances in the thefts and the owner in insurance fraud. Defendant now appeals, raising a litany of issues.

Initially, we find that on the second day of the trial, defendant

knowingly, voluntarily and intelligently waived his right to be present by requesting to be removed from the courtroom and returned to jail for the trial's remainder (*see People v Parker*, 57 NY2d 136, 139-142 [1982]), because he was unhappy with County Court's *Molineux* rulings. Defendant's waiver occurred after he conferred with counsel, who advised against it, and after the court attempted to change his mind and made clear that the trial would proceed (*see id.* at 141; *People v Walsh*, 222 AD2d 735, 736 [1995], *lv denied* 88 NY2d 855 [1996]). Notably, defendant appeared the next day and was persuaded to be present for the remainder of the trial.

Defendant further challenges the verdict as not supported by legally sufficient evidence. We are unpersuaded. The primary issue at trial was defendant's intent[1] to commit the crime of larceny at the time of his unlawful nighttime entry, which was proven by the manner of his entry (using a ladder, forcing open a porch window and removing an air conditioner) (*see People v Jacobs*, 37 AD3d 868, 870 [2007], *lv denied* 9 NY3d 923 [2007]), the condition of the apartment and the evidence of numerous missing items (*see People v Tricic*, 34 AD3d 1319 [2006], *lv denied* 8 NY3d 850 [2007]) and his conduct in hiding (*see People v Moore*, 285 AD2d 827, 828 [2001], *lv denied* 97 NY2d 685 [2001]). Viewing the evidence in a light most favorable to the People and according them the benefit of every favorable inference, we find that it was sufficient (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

With regard to defendant's challenge to the weight of the evidence, we find that an acquittal on the burglary charge would indeed have been unreasonable (*see id.*; *see also People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Romero*, 7 NY3d 633, 643-644 [2006]). Even were we to weigh the conflicting evidence, the People's witnesses overwhelmingly established that defendant's unlawful entry was with the intent to steal, and his implausible testimony to the contrary is simply unworthy of belief.

Defendant also argues that the People's failure to provide a

---

1. Defendant testified that he believed the upstairs apartment was unoccupied and that he had the tenant's permission to enter, thereby disputing that it was an occupied dwelling (*see* Penal Law § 140.00 [3]) and that he had a right to be there (*see* Penal Law § 140.00 [5]). Although he raised neither claim in his motion for a trial order of dismissal, County Court expressly decided the latter issue so as to preserve it for review (*see People v Edwards*, 95 NY2d 486, 491 n 2 [2000]). In any event, the proof amply established that defendant knew the owner lived in the fully furnished apartment, notwithstanding her trips out of town (*see People v Barney*, 99 NY2d 367, 370-371 [2003]), and that he lacked permission to enter it (*see People v Jackson*, 38 AD3d 1052, 1053-1054 [2007], *lv denied* 8 NY3d 986 [2007]).

criminal background check for a witness who testified—pursuant to the *Molineux* ruling—that defendant had stolen her car earlier in 2004, violated the People's *Rosario* obligation. However, CPL 240.45 (1) (b) only requires disclosure of records of judgments of conviction of a witness if it is "known by the prosecutor to exist" (*see People v Griffin*, 48 AD3d 894, 895 [2008]; *People v Ingraham*, 274 AD2d 828, 829 [2000]). County Court credited the People's representation that they did not request or possess a background check for this witness and had no knowledge of the criminal convictions in issue. Further, the defense was able to impeach the witness with three known convictions, and any error in refusing to allow the witness to be recalled for further impeachment was harmless (*see People v Pressley*, 91 NY2d 825, 827 [1997]).

Likewise unpersuasive are defendant's claims that County Court erred in curtailing defense counsel's cross-examination of, and right to call, witnesses regarding the tenant's alleged drug activity in an effort to raise the specter of other perpetrators. We find no abuse of discretion in the limitations placed on the defense, given the lack of a good-faith showing of such activity at this location, that the sole issue at trial was defendant's intent in entering this dwelling, and that he was permitted to explore this theory upon cross-examination of the tenant (*see People v Richardson*, 28 AD3d 1002, 1004-1005 [2006], *lv denied* 7 NY3d 817 [2006]).

Next, we address County Court's *Molineux* and *Sandoval* rulings. After a lengthy hearing and repeatedly revisiting and modifying its ruling throughout the trial, the court permitted the People to elicit evidence of only three prior bad acts and criminal convictions out of more than 25 proffered: (1) a 1990 burglary conviction in Florida for stealing a car (proved by a certificate of conviction), (2) a 1996 conviction for petit larceny for stealing from his mother (proved by a certificate of conviction after defendant's mother and sister were unable to recall the incident at trial), and (3) the 2004 incident in which defendant stole a car from a witness who testified after spending an evening at a hotel with her. The foregoing were relevant and admissible under *Molineux* to show defendant's larcenous intent in entering this dwelling. As none of the missing items was recovered or found on defendant's person, his intent was the central disputed issue that could not be easily inferred, given his relationship with the tenant and recent presence at the house to assist in repair work (*see People v Alvino*, 71 NY2d 233, 242 [1987]; *People v Bourne*, 46 AD3d 1101, 1103 [2007], *lv denied* 10 NY3d 762 [2008]; *cf. People v Billups*, 45 AD3d 1176,

1177 [2007]; *People v Hunter*, 32 AD3d 611, 612 [2006]). Indeed, defense counsel's opening statement implied that there was an innocent explanation for defendant's presence in the dwelling, putting his intent in issue (*see People v Wright*, 5 AD3d 873, 876 [2004], *lv denied* 3 NY3d 651 [2004]), and defendant testified to that end. Further, the record reflects that the court meticulously weighed the probative value of this evidence against its potential prejudice, excluding most of defendant's lengthy criminal history, and provided immediate and clear limiting instructions each time the evidence was elicited and in its final charge (*see People v Alvino*, 71 NY2d at 242).

We next consider County Court's *Sandoval* ruling, pursuant to which the People were permitted to ask circumscribed questions on cross-examination of defendant for impeachment purposes regarding six criminal convictions and two uncharged acts of larceny in 2004. The prior crimes and bad acts for which limited inquiry was allowed, including prior larcenous behavior, reflect defendant's willingness to place his self-interests above those of society, and we discern no abuse of discretion in the court's ruling that they had a bearing on his credibility as a witness (*see People v Hayes*, 97 NY2d 203, 207 [2002]; *People v Sandoval*, 34 NY2d 371, 376-377 [1974]; *People v Valderama*, 25 AD3d 819, 820 [2006], *lv denied* 6 NY3d 854 [2006]). The court's ruling was a carefully crafted compromise in which most of the numerous prior convictions and bad acts sought to be used were excluded, and those permitted were redacted or limitations were placed on the elicitation of underlying facts.

Further, defendant challenges that aspect of County Court's *Sandoval* ruling allowing the use of two 2004 *uncharged* larcenies for impeachment purposes, for which he invoked his 5th Amendment right against self-incrimination. The Court of Appeals has long held that "a defendant-witness does not generally and automatically waive the privilege against self-incrimination as to *pending* collateral criminal charges" (*People v Betts*, 70 NY2d 289, 294-295 [1987] [emphasis added]; *accord People v Bennett*, 79 NY2d 464, 468-469 [1992]). It is unclear, however, if this rule applies to preclude impeachment of a defendant with *uncharged* criminal conduct, i.e., where the defendant had never been charged with the prior larcenies (but theoretically could still be—if the statute of limitations has not yet run), although there is authority to support such an extension of the *Betts* rule (*see* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 240.43, at 442-443). However, even assuming that the *Betts* rule applies to uncharged criminal acts for which defendant could still be prosecuted, we

would find that there is no reasonable possibility that the questions contributed to defendant's conviction and, thus, any error was harmless beyond a reasonable doubt[2] (*see People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Perez*, 160 AD2d 637, 638 [1990], *lv denied* 76 NY2d 793 [1990]). Notably, the court's advance ruling did not cause defendant to forgo his right to testify (*cf. People v Bennett*, 79 NY2d at 468; *People v Betts*, 70 NY2d at 290-291), and his invocation of his right against self-incrimination was honored each time and questioning ceased; also, the court provided a cautionary jury instruction (*see* CJI2d[NY] Witness Refuses To Answer—Refusal Effect on Witness Credibility) to which no objection was raised. As such, we find no reversible error.

We have considered defendant's remaining contentions, including those raised in his pro se brief and the claims of ineffective assistance of counsel, and find that they lack merit. Finally, defendant's sentence, while the maximum permissible, was neither harsh nor excessive given his conduct, his lengthy history of stealing and committing other crimes, and his disregard of the law and the rights of others.

Cardona, P.J., Mercure, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.

---

**2.** It is doubtful that any error of constitutional dimension occurred, given that defendant's constitutional rights to testify and to invoke his right against self-incrimination were honored. Further, no denial of a fair trial occurred.