THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERTO J. RIVERA, Also Known as A.J. RIVERA, Appellant. [896 NYS2d 192]—

Kavanagh, J. Appeal from a judgment of the County Court of Rensselaer County (Jacon, J.), rendered March 23, 2007, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree (two counts).

Defendant was charged with causing the October 2005 death of the victim by shooting her after she had been lured into an alleyway near where she was residing. According to the People, defendant committed this crime because he believed that the victim was an informant and had told the police that he and Charles Smith had recently set fire to a nearby building. Defendant was subsequently charged by indictment with murder in the second degree, criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree.[1] After a trial by jury, defendant was convicted as charged and was sentenced to an aggregate prison term of 25 years to life, plus various periods of postrelease supervision. Defendant now appeals.

Initially, defendant takes issue with County Court's ruling on his *Sandoval* motion that permitted the People to cross-examine him if he testified at trial regarding his participation in an insurance fraud scheme involving his mother's automobile. While a defendant may not, as a general rule, be cross-examined

---

1. Derrick Rosa was also charged in the same indictment with criminal possession of a weapon in the second degree and related crimes for having obtained the gun that defendant used to kill the victim. He eventually pleaded guilty to attempted criminal sale of a firearm and was sentenced to time served and five years of probation.

regarding unrelated criminal charges that are actually pending at the time of trial (*see People v Bennett*, 79 NY2d 464, 468 [1992]; *People v Betts*, 70 NY2d 289, 292 [1987]), here, defense counsel represented to the court that defendant had entered into a cooperation agreement with law enforcement authorities and, as a result, would not be prosecuted for any crimes that he may have committed in regard to that matter. Given that representation and the obvious relevance defendant's involvement in such a scheme would have on his credibility as a witness, we do not agree that County Court abused its discretion by allowing him to be cross-examined regarding this matter if he elected to testify at trial (*see People v Hayes*, 97 NY2d 203, 207 [2002]; *People v Lemke*, 58 AD3d 1078, 1078-1079 [2009]; *People v Carter*, 50 AD3d 1318, 1322-1323 [2008], *lv denied* 10 NY3d 957 [2008]).

Next, defendant claims that County Court improperly denied challenges for cause that he made to prospective jurors during voir dire. One challenge was made in regard to responses provided by prospective juror No. 227, after she was asked by defense counsel if it would be difficult for her to arrive at a verdict if she heard only one side of the story. The juror initially stated, "how could you be fair and impartial if you had no evidence to the contrary of what was being presented," and then later during voir dire said, "Actually, I think it would make the job quite easy." While defendant claims that these answers indicate that the juror would not be fair, each answer, when viewed in its proper context, represented an honest and appropriate response to the question as asked and did not serve to establish that this particular juror had "a state of mind that [was] likely to preclude [her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]). We note that even defense counsel recognized that the questions as posed were somewhat problematic and the juror was not declaring that "she would require a defense" before she could vote to acquit defendant of the charges contained in the indictment. When measured against other assurances given by the juror that she could be fair and there being no evidence in the record that she would not comply with the court's legal instructions, we cannot conclude that, as a result of these statements, County Court abused its discretion by denying defendant's challenge for cause (*see People v Wilson*, 52 AD3d 941, 942 [2008], *lv denied* 11 NY3d 743 [2008]; *People v Johnson*, 40 AD3d 1011, 1012 [2007], *lv denied* 9 NY3d 923 [2007]).

Similarly, we can find no abuse of discretion in County Court's

denial of defendant's challenge for cause to prospective juror No. 159, who acknowledged being previously prosecuted by the District Attorney's office for driving while intoxicated. Initially, we note that since the juror ultimately entered a guilty plea to these charges, any bias that might emanate from this prosecution would not appear, on the surface, to be directed against defendant.[2] In addition, we cannot agree that such a remote prosecution occurring over 20 years ago involving personnel from the District Attorney's office not in any way connected to this trial serves to establish an implied bias on the part of the juror that "is likely to preclude [the juror] from rendering an impartial verdict" (CPL 270.20 [1] [c]; *see People v Provenzano*, 50 NY2d 420, 424 [1980]; *People v Culhane*, 33 NY2d 90, 104 n 2 [1973]; *see also People v Arnold*, 96 NY2d 358, 362-364 [2001]).

Defendant also claims that County Court, by excluding his wife from the courtroom, deprived him of the right to a public trial. Considering that his wife was identified by defendant as a potential alibi witness and defense counsel never unequivocally represented that he would not call her as a witness, County Court did not abuse its discretion by directing that she be excluded from the courtroom during the trial (*see People v Baker*, 58 AD3d 1069, 1070-1071 [2009], *lv granted* 12 NY3d 851 [2009]; *People v Nevarez*, 245 AD2d 173 [1997], *lv denied* 91 NY2d 943 [1998]; *compare People v Ortiz*, 6 AD3d 731, 732 [2004]).[3]

Defendant also challenges various evidentiary rulings made by County Court during the trial. In particular, he argues that the court committed reversible error by allowing the City of Troy Fire Chief to testify to the existence of a suspicious fire that occurred in a house near where the victim was killed in the week prior to the shooting. Defendant argues that there was no credible evidence linking him to this fire and any reference to it should have been excluded at trial. However, evidence was presented that defendant had made admissions to a third party that he and Smith had decided to murder the victim because they believed that she was cooperating with the authorities in the investigation of a suspicious fire and feared that she would tell the police that they were responsible. Even though, as defendant claims, no evidence was presented implicating him in

---

**2.** We also observe that, during voir dire, defendant had refused to consent to individuals who had felony charges pending in Rensselaer County or who had been recently prosecuted by the Rensselaer County District Attorney's office being excused from jury service.

**3.** Defendant's wife was also listed by the People as a witness, but the People stated at the outset of the trial that she would not be called as a prosecution witness.

the fire referred to by the Fire Chief in his trial testimony, the fact that an arson had been perpetrated at that time and place constituted compelling corroboration of this witness's testimony and provided support for the People's theory as to why defendant decided to attack the victim and ultimately kill her (*compare People v Arafet*, 13 NY3d 460, 465-468 [2009]; *see People v Giles*, 11 NY3d 495, 498-500 [2008]).

Defendant also argues that County Court erred by not admitting into evidence prior written and oral statements made by Smith regarding what had occurred on the evening of the shooting. Smith, who was at the scene when police arrived minutes after the attack, essentially told the police that he and the victim were set upon by two black males with dreadlocks and that, during the attack, they shot her. Defendant offered these statements into evidence after it was determined that Smith would not testify and, if called, would invoke his right against self-incrimination (*see People v Thomas*, 51 NY2d 466, 472, 473 [1980]). While Smith was clearly unavailable to testify based on his assertion of his constitutional right, his statements would only be admissible if they constituted admissions against his penal interest (*see People v Settles*, 46 NY2d 154, 167 [1978]). These statements, as attributed to Smith, do not in any way implicate him in the attack of the victim and cannot, when fairly viewed, be said to be at odds with his penal interest. As such, County Court correctly found that they were not admissible as an exception to the rule against hearsay (*see People v Strong*, 27 AD3d 1010, 1013 [2006], *lv denied* 7 NY3d 763 [2006]). While we recognize that this rule in this context should not be rigidly applied, especially where the statement as offered " 'forms a critical part of the defense' " (*People v Oxley*, 64 AD3d 1078, 1084 [2009], quoting *People v Darrisaw*, 206 AD2d 661, 664 [1994]), Smith's recitation as to what transpired at the time of the attack was so dramatically inconsistent with other evidence introduced at trial as not to be credible (*see People v Settles*, 46 NY2d at 167; *People v Strong*, 27 AD3d at 1013). Therefore, County Court did not err in refusing to admit these statements as offered by defendant into evidence.

Defendant also claims that County Court erred by allowing a witness to testify to discharging firearms with defendant on a prior occasion that was totally unrelated to the murder of the victim. While the relevance of this testimony is subject to question and, in our view, it should not have been admitted into evidence at trial, we note that another prosecution witness gave similar testimony for which there was no objection by defendant. Under the circumstances, and given that " 'the proof of

. . . defendant's guilt, without reference to the error, is overwhelming' " and there is no " 'significant probability . . . that the jury would have acquitted . . . defendant had it not been for the error,' " we conclude that it was not reversible error to have admitted this testimony into evidence at trial (*People v Arafet*, 13 NY3d at 467, quoting *People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

Defendant also claims that County Court improperly allowed the People to elicit testimony from a witness that suggested that defendant had, at the time of the shooting, been involved in the illegal sale of drugs. In that regard, two sisters called by the People testified that, shortly before the shooting, they were in the alley with defendant when he pulled a gun from the waistband of his trousers and displayed it to them. The witnesses, both of whom admitted to being addicted to crack cocaine, testified that defendant showed them the firearm as part of an offer to help them if they ever had any problems while they were buying or selling drugs. Defendant argues that this testimony indirectly communicated to the jury that he was involved in the illegal drug trade, and that he was therefore profoundly prejudiced by its admission into evidence. However, testimony that defendant was at the scene of the crime armed with a firearm shortly before the shooting occurred, while prejudicial, is undoubtedly relevant in establishing his identification as the victim's killer. In addition, a full explanation as to why defendant would, under the circumstances, display a handgun to these witnesses was necessary to put their testimony in its proper context (*see People v Resek*, 3 NY3d 385, 389 [2004]; *People v Till*, 87 NY2d 835, 837 [1995]; *People v Williams*, 28 AD3d 1005, 1008 [2006], *lv denied* 7 NY3d 819 [2006]; *People v Tarver*, 2 AD3d 968, 969 [2003]).

We do, however, agree with defendant that manslaughter in the second degree, on the facts presented, represented a reasonable view of the evidence introduced at trial and that County Court erred by refusing his request that it be submitted to the jury as a lesser included offense to the charge of murder in the second degree. It is now well established that, even though manslaughter in the second degree requires proof that a defendant acted recklessly, it is a lesser included offense to an intentional murder (*see* Penal Law § 125.15 [2]; § 125.25 [1]; *People v Sullivan*, 68 NY2d 495, 501 [1986]; *People v Boyd*, 60 AD3d 779, 780 [2009], *lv denied* 12 NY3d 913 [2009]). As such, the issue presented is whether, on the evidence introduced at trial, it would have been reasonable for the jury to conclude that defendant, at the time he discharged the weapon, acted recklessly

as opposed to intentionally in causing the victim's death (*see* Penal Law § 15.05 [3]; *People v Boyd*, 60 AD3d at 780).

While there is ample proof in the record to support the jury's conclusion that defendant intended to kill the victim when he shot her, evidence also exists that supports a finding that, at the time defendant discharged the firearm, he did not deliberately intend to shoot the victim, but rather was acting recklessly in causing her death. In particular, evidence was presented that defendant had consumed alcohol on the night of the shooting and may have been intoxicated when he confronted the victim in the alley.[4] In addition, a witness who lived in the area recalled talking to defendant about the shooting shortly after it had occurred and being told by defendant " '[i]t wasn't supposed to happen like that, I was just supposed to scare her.' " Moreover, forensic evidence established that seven shots were fired at close range during the attack, but only one—an apparent ricochet—actually struck the victim. The remaining rounds were scattered throughout the vehicle and it was never conclusively established at trial that the victim was in the vehicle at the time she was shot.

Shooting a victim at close range may be deemed reckless rather than intentional, especially if the " 'shooting itself appeared to have been sudden, spontaneous and not well-designed to cause imminent death' " (*People v Baptiste*, 306 AD2d 562, 564 [2003], *lv denied* 1 NY3d 594 [2004], quoting *People v Sanchez*, 98 NY2d 373, 377 [2002]). Given that a "refusal to charge a lesser included crime is warranted only where every possible hypothesis but guilty of the higher crime [is] excluded" (*People v Johnson*, 45 NY2d 546, 549 [1978] [internal quotation marks and citations omitted]; *see People v Caruso*, 6 AD3d 980, 983 [2004], *lv denied* 3 NY3d 704 [2004]), we cannot conclude that the jury could not have found that defendant acted recklessly at the time he fired the shot that resulted in the victim's death. Therefore, in our view, manslaughter in the second degree represented a reasonable view of the credible evidence introduced at trial and should have been submitted to the jury as a lesser included offense to the charge of murder in the second degree (*see People v Ryan*, 55 AD3d 960, 963 [2008]; *People v Richard*, 30 AD3d 750, 756 [2006], *lv denied* 7 NY3d 869 [2006]). As a result, defendant's conviction of murder in the

---

4. While the People argue that defendant failed to preserve this claim, we disagree. Defendant specifically requested that the jury be given the option of considering manslaughter in the second degree as a lesser included offense to the murder charge and this request, as made, serves to preserve this issue for our review (*see* CPL 470.05 [2]).

second degree is reversed and a new trial is ordered on that charge.

Cardona, P.J., Mercure, Malone Jr. and McCarthy, JJ., concur. Ordered that the judgment is modified, on the law, by reversing defendant's conviction of murder in the second degree under count one of the indictment and vacating the sentence imposed thereon; matter remitted to the County Court of Rensselaer County for a new trial on said count; and, as so modified, affirmed.