People v Edmonds (2018 NY Slip Op 07202)





People v Edmonds


2018 NY Slip Op 07202


Decided on October 25, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 25, 2018

108812

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
DEMMCA L. EDMONDS, Appellant.

Calendar Date: September 13, 2018

Before: Egan Jr., J.P., Clark, Mulvey, Aarons and Pritzker, JJ.


Kevin A. Jones, Ithaca, for appellant.
Patrick A. Perfetti, District Attorney, Cortland (Elizabeth McGrath of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a judgment of the County Court of Cortland County (Campbell, J.), rendered August 4, 2016, convicting defendant following a nonjury trial of the crimes of burglary in the third degree, petit larceny (two counts) and conspiracy in the sixth degree.
Following allegations that defendant, together with three others, stole merchandise from Rue 21 and Walmart, defendant was charged by amended indictment with burglary in the third degree, two counts of petit larceny and conspiracy in the sixth degree [FN1]. The matter ultimately proceeded to a nonjury trial, after which defendant was convicted as charged and sentenced, as a second felony offender, to an aggregate prison term of 3 to 6 years. Defendant now appeals.
Defendant argues that her conviction for burglary in the third degree is not supported by legally sufficient evidence and is against the weight of the evidence. A defendant is guilty of burglary in the third degree "when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). In an ordinary prosecution for burglary in the third degree, the People need only prove that the defendant intended to commit a crime in the building, not the exact crime intended (see Penal Law § 140.20; People v Barnes, 50 NY2d 375, 379 n 3 [1980]; People v Mackey, 49 NY2d 274, 279 [1980]). However, where the People particularize — through a bill of particulars or otherwise — the precise crime that the defendant intended to commit, the People are thereafter obligated to prove that narrower theory of prosecution (see People v Shealy, 51 NY2d 933, 934 [1980]; People v Barnes, 50 [*2]NY2d at 379 n 3; People v Kolempear, 267 AD2d 327, 327-328 [1999], lv denied 95 NY2d 799 [2000]).
Here, the People specified in their bill of particulars that, upon entering Walmart, defendant intended to commit grand larceny in the fourth degree, which requires proof that defendant stole property and that the value of that stolen property exceeded $1,000 (see Penal Law § 155.30 [1]). Thus, by their own limitation, the People had to prove that defendant knowingly entered Walmart unlawfully with the intent to steal over $1,000 worth of property (see Penal Law §§ 140.20, 155.30 [1]). To that end, the People introduced into evidence three notices of restriction previously issued to and signed by defendant, which demonstrated that, at the time that defendant entered Walmart, she had been banned from all Walmart property and put on notice that her entry onto Walmart property would place her at risk of arrest and prosecution for criminal trespass. The People also presented testimony from members of the Cortland County Sheriff's Department establishing that a vehicle in which defendant was a passenger was stopped by law enforcement shortly after a reported larceny at Rue 21. As a result of that traffic stop, various items were recovered from the vehicle, including a large plastic green tote bin filled with clothing and other miscellaneous items, three children's scooters, a Fisher Price infant to toddler rocker and a polka dot gift bag. These recovered items were identified as store merchandise by an asset protection associate of Walmart.[FN2]
Store surveillance footage from the day in question, which was admitted into evidence, showed defendant — who was dressed in brightly colored striped pants — enter the store with three other individuals, including her adult daughter. The footage shows defendant carrying a large plastic green tote bin with its lid off and, thereafter, pushing a cart containing various unidentifiable merchandise. Shortly thereafter, her daughter is seen pushing a cart containing a closed green tote bin (presumably the same tote that defendant had earlier), a baby outfit and a large boxed item underneath. As shown in the footage, defendant and her daughter then enter the garden department pushing their separate carts when defendant encounters a Walmart employee. The daughter is then seen leaving the garden department with her cart, and defendant surrenders her cart to the employee. The footage shows defendant leave the store shortly thereafter, and her daughter subsequently push the cart with the closed green tote bin out of the store. Defendant later reenters the store and can be seen on the store footage pushing a cart with what appears to be three scooters and a polka dot gift bag. The footage depicts defendant ultimately pushing that cart out of the store. The asset protection associate testified that he viewed the store surveillance footage from the day in question and that, based upon his review of that footage, as well as sales receipts from that day, he determined that defendant and her companions had not paid for the recovered Walmart merchandise.
In our view, defendant's entry onto Walmart property while subject to several notices of restriction banning her from the store, along with her actions in the store, as depicted in the surveillance footage, provide sufficient proof from which County Court could conclude by a valid line of reasoning and permissible inferences that defendant knowingly entered Walmart unlawfully with the intent to commit grand larceny in the fourth degree (see People v Pearson, 163 AD3d 446, 447 [2018]; People v Ellison, 107 AD3d 1580, 1580 [2013], lv denied 21 NY3d 1073 [2013]; People v McCants, 194 AD2d 301, 302 [1993], lv denied 82 NY2d 722 [1993]; see generally People v Zokari, 68 AD3d 578, 578 [2009], lv denied 15 NY3d 758 [2010]). The nature and type of items ultimately stolen, taken together with defendant's apparent attempt to leave the garden department with numerous other unidentifiable items, gives rise to the permissible inference that defendant's intent was to abscond with as much merchandise as possible. Accordingly, defendant's conviction for burglary in the third degree, as pleaded by the People, is supported by legally sufficient evidence. Similarly, while it would not have been unreasonable for County Court to have reached a different conclusion, we find that defendant's burglary conviction is supported by the weight of the credible evidence (see People v Pearson, [*3]163 AD3d at 447; People v Brunson, 294 AD2d 104, 104 [2002], lv denied 98 NY2d 695 [2002]).
We also reject defendant's contention that the Walmart store surveillance footage was not properly authenticated and, thus, should not have been admitted into evidence. "[A] videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted" (People v Patterson, 93 NY2d 80, 84 [1999]; accord People v Oquendo, 152 AD3d 1220, 1221 [2017], lv denied 30 NY3d 982 [2017]). Here, the Walmart asset protection associate testified that, in the normal course of business, Walmart maintained and operated various surveillance cameras throughout the store, which would continuously capture and record the events taking place in the store in real time and save that recorded footage on a secure server. He testified that, as part of his job, he would view the recorded surveillance footage and, where required, copy the relevant footage onto CDs and give the footage to law enforcement, as he did here. He further testified that the stored footage was password protected and that members of the public were unable to access or manipulate the footage. He unequivocally stated that there were protections in place that safeguarded the authenticity of the surveillance footage. Under these circumstances, we find the challenged surveillance footage to have been adequately authenticated (see People v Oquendo, 152 AD3d at 1221; People v Cabrera, 137 AD3d 707, 707-708 [2016], lv denied 27 NY3d 1129 [2016]). Any gaps in the chain of custody went to the weight that was to be accorded to the video recordings, not their admissibility (see People v Ely, 68 NY2d 520, 528 [1986]; People v Oquendo, 152 AD3d at 1221).
Finally, we find no merit to defendant's argument that her burglary conviction should be reversed, and that charge dismissed from the amended indictment, because County Court permitted the People to present evidence of the facts and circumstances leading to the notices of restriction banning her from Walmart. Evidence of uncharged crimes or prior bad acts is inadmissible unless it is probative of a material issue other than criminal propensity and its probative value outweighs the risk of prejudice (see People v Cass, 18 NY3d 553, 559 [2012]; People v Billups, 45 AD3d 1176, 1177 [2007]). Here, although the disputed evidence was relevant to the issue of whether defendant entered Walmart with the intent to steal more than $1,000 worth of merchandise (see People v Carter, 50 AD3d 1318, 1321 [2008], lv denied 10 NY3d 957 [2008]), evidence of prior misconduct to prove intent is unnecessary where intent may be easily inferred from the commission of the act itself (see People v Vargas, 88 NY2d 856, 858 [1996]; People v Alvino, 71 NY2d 233, 242 [1987]). Arguably, defendant's intent to commit grand larceny in the fourth degree can be easily inferred solely from defendant's actions while in the store, without evidence of the facts and circumstances leading to the notices of restriction [FN3] (see People v Athanasatos, 40 AD3d 1263, 1265 [2007], lv denied 9 NY3d 872 [2007]; People v Hunter, 32 AD3d 611, 612 [2006]). Nevertheless, any error in permitting evidence of the facts and circumstances underlying the notices of restriction was harmless given the overwhelming evidence of defendant's guilt (see People v Athanasatos, 40 AD3d at 1265). Moreover, because County Court was the finder of fact, it was capable of disregarding any unduly prejudicial aspect of the evidence (see People v Moreno, 70 NY2d 403, 406 [1987]; People v Rodriguez, 153 AD3d 1178, 1178 [2017], lv denied 30 NY3d 1108 [2018]; People v Wise, 46 AD3d 1397, 1399 [2007], lv denied 10 NY3d 872 [2008]).
Egan Jr., J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was initially charged with burglary in the third degree, grand larceny in the fourth degree, one count of petit larceny and conspiracy in the sixth degree. However, prior to trial, the People amended the indictment — with defendant's consent — by replacing the grand larceny charge with an additional petit larceny charge.

Footnote 2: The evidence demonstrated that additional clothing was recovered from the vehicle, and testimony from a Rue 21 employee established that such clothing was sold at Rue 21.

Footnote 3: The notices of restriction, themselves, were relevant to the issue of whether defendant knowingly entered Walmart unlawfully — elements of the crime of burglary in the third degree (see Penal Law § 140.20; People v Wilson, 96 AD3d 1470, 1470 [2012], lv denied 19 NY3d 1002 [2012]).